2016 COA 22

**CORE–MARK MIDCONTINENT INC., Core–Mark International Inc., United States Fire Insurance Co., and Commonwealth Insurance Co., Plaintiffs–Appellants and Cross–Appellees,**

**v.**

**SONITROL CORPORATION, Defendant–Appellee and Cross–Appellant.**

**Court of Appeals No. 14CA1575**

Colorado Court of Appeals,
Div. III.

Announced February 11, 2016

Adams County District Court No. 03CV3836, Honorable C. Scott Crabtree, Judge

Davis Graham & Stubbs LLP, Andrew M. Low, Shannon Wells Stevenson, Kyle W. Brenton, Benjamin B. Strawn, Gregory Silbert, Thomas Dunford, Denver, Colorado; Weil, Gotshal & Manges LLP, Adam Banks, New York, New York; Watkins & Letofsky, LLP, Brian Letofsky, Newport Beach, California, for Plaintiffs–Appellants and Cross–Appellees.

Bartlit Beck Herman Palenchar & Scott LLP, Sean C. Grimsley, John M. Hughes, Katherine L.I. Hacker, Daniel C. Taylor, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by JUDGE J. JONES

¶ 1 Plaintiffs, Core–Mark International, Inc. and its wholly owned subsidiary, Core–Mark Midcontinent, Inc. (collectively, Core–Mark); and Core–Mark's casualty insurers, United States Fire Insurance Company and Commonwealth Insurance Company (collectively, the Insurers), appeal the judgment entered after a jury trial to determine damages on their breach of contract claims against defendant, Sonitrol Corporation. Sonitrol cross-appeals the judgment and conditionally cross-appeals the district court's denial of its motion to strike a portion of Core–Mark's damages claim. We affirm the judgment and dismiss Sonitrol's conditional cross-appeal.

## I. Background

¶ 2 Core–Mark distributes merchandise to convenience stores. Core–Mark contracted with Sonitrol to install and monitor a security system at a warehouse Core–Mark used to store inventory.[1]

¶ 3 In 2002, three men burglarized Core–Mark's warehouse. Sonitrol employees failed to detect or respond to the break-in while the burglars looted the building for several hours. Sonitrol employees ignored several alarms activated by the burglars' noise. One of the burglars started a fire in the warehouse that destroyed the building and its contents.

¶ 4 Core–Mark and the Insurers sued Sonitrol, asserting both tort and contract claims to recover for losses resulting from the burglary. The district court dismissed Core–Mark's tort claims and granted Sonitrol's motion for summary judgment on the contract claims based on a limitation of liability clause in Core–Mark's contract with Sonitrol.

¶ 5 On appeal, a division of this court affirmed the dismissal of the tort claims, but reversed the grant of summary judgment on the contract claims, holding that Core–Mark's claims for willful and wanton breach of contract were not subject to the contractual limitation of liability. *U.S. Fire Ins. Co. v. Sonitrol Mgmt. Corp.*, 192 P.3d 543 (Colo. App. 2008) (*Sonitrol I*). The division remanded the case for a trial on the breach of contract claims.

¶ 6 On remand, a jury found that Sonitrol had willfully and wantonly breached its contract with Core–Mark and breached the contractual duty of good faith and fair dealing. The jury awarded $7,348,732 to Core–Mark and $10,965,777 to the Insurers.

¶ 7 On appeal, a division of this court affirmed the jury's verdict as to Sonitrol's liability, but reversed the damages award. *Core–Mark Midcontinent, Inc. v. Sonitrol Corp.*, 2012 COA 120, 300 P.3d 963 (*Sonitrol II*). The division held that the district court erred by excluding the testimony of Sonitrol's expert witnesses regarding the foreseeability of the extent of Core–Mark's losses. The division remanded the case for a new trial on damages, at which Sonitrol's experts

---

1. The historical facts of this case are more fully set forth in the decisions in two prior appeals of this case, *United States Fire Insurance. Co. v. Sonitrol Management Corp.*, 192 P.3d 543 (Colo. App. 2008) (*Sonitrol I*), and *Core–Mark Midcontinent, Inc. v. Sonitrol Corp.*, 2012 COA 120, 300 P.3d 963 (*Sonitrol II*).

would be permitted to testify. *Id.* at ¶¶ 35, 39–40.

¶ 8 On remand, a jury awarded Core–Mark $2,750,000.

## II.  Core–Mark's Appeal

¶ 9 Core–Mark makes three primary contentions on appeal: (1) the district court erred in allowing Sonitrol to present evidence that the arson was not foreseeable; (2) the district court erred in refusing to give the jury Core–Mark's tendered instruction explaining the phrase "natural and probable consequence" used in a damages instruction; and (3) the district court abused its discretion by excluding evidence of how Sonitrol breached the contract. We address and reject these contentions in turn.

### A.  Foreseeability of Arson

### 1.  Procedural Background

¶ 10 In *Sonitrol II*, the division held that to be liable for the losses claimed by a plaintiff, "[t]he defendant must have had reason to foresee both the type and the general magnitude of damages." *Sonitrol II*, ¶ 31. The division reversed and remanded "for a new trial on damages," *id.* at ¶ 1; *see id.* at ¶¶ 40, 50, because the district court had erroneously precluded three experts from testifying for Sonitrol that Core–Mark's storage of excessive amounts of flammable liquids in the warehouse, and other related actions and circumstances, contributed significantly to the loss resulting from the fire. *Id.* at ¶¶ 30–40. On remand, Core–Mark filed a motion in limine asking the court to exclude "all evidence attempting to controvert the Court of Appeals' ruling that the type of damages resulting from the fires was foreseeable to Sonitrol." Core–Mark characterized the "type" of damages at issue as "an arson fire started by an undetected burglar," and argued that the *Sonitrol II* division's statement "[w]e assume that Sonitrol could have foreseen that if it failed to detect a break-in at the warehouse, a burglar could start a fire," *see Sonitrol II*, ¶ 32, was the "law of the case" as to whether the fire was foreseeable. In short, Core–Mark argued that the division's assumption that the fire was foreseeable was a holding that the fire was foreseeable.

¶ 11 Sonitrol's opposition to Core–Mark's motion in limine argued, as now relevant, that the division's assumption was not a holding, the law of the case doctrine does not apply to an issue (like the foreseeability of the fire) that the appellate court did not decide, and the *Sonitrol II* mandate did not limit the trial on remand to the question of the extent of fire-related damages, but to "damages generally." In so arguing, Sonitrol also characterized "arson" as a "type" of damages.

¶ 12 The district court denied Core–Mark's motion, for two reasons. First, the court ruled that the division's assumption that the fire was foreseeable was not the law of the case because it was not necessary to the division's holdings. Second, the court ruled that evidence regarding the foreseeability of the fire was not precluded by the scope of the division's remand.

¶ 13 At trial, one of Core–Mark's experts testified that the arson was foreseeable. He did not say that arson was a "probable" result of the breach, noting that burglars committing arson in connection with a burglary was "statistically quite rare." Rather, he opined that the fire was foreseeable in the same sense that a commercial airline pilot becoming incapacitated is foreseeable because though "statistically rare," it does happen. Another of Core–Mark's experts testified, in response to a question whether Core–Mark's damages were "a natural and probable consequence of the breach of contract," that "Sonitrol's breach of contract flowed through the natural flow, probable breach of what they did." Core–Mark has not pointed to any other evidence it introduced at trial as to the foreseeability of its claimed damages.

¶ 14 A long-time Sonitrol employee testified that the purpose of Sonitrol's burglar alarm system was to detect break-ins, not fires, and that the nature of what was stored in the warehouse was not relevant to services Sonitrol was to provide under the burglar alarm contract. He also testified that, in the thirty-six years he had worked for Sonitrol, the only burglary of a Sonitrol-monitored facility that involved a fire, of which he was

aware, was the burglary of Core–Mark's warehouse. Two experts testified on behalf of Sonitrol that Core–Mark stored more than thirty times the amount of flammable or combustible materials allowed by fire and building codes, and that Core–Mark's violations of those codes was a significant contributing factor to the extent of the fire loss.

¶ 15 The district court's instruction to the jury on the foreseeability of damages read:

> General damages is the amount required to put the plaintiff in the same position as if the breach had not occurred. You may award general damages if you find that they were a natural and probable consequence of the defendant's breach of contract that the defendant reasonably could have foreseen at the time the parties entered into the contract and the damages would probably occur if defendant breached the contract.
>
> If general damages have been proved, you shall award damages in the following categories:
> - Inventory lost
> - Fixed assets lost
> - Accounts receivable lost
> - Extra expenses
> - Business income lost[.]

¶ 16 During closing argument, Core–Mark's attorney argued that damages are the "natural and probable consequence" of a breach if the breach was the "but for" cause of the damages, and asserted that arsons are a common occurrence in the United States. Counsel also argued the following regarding whether damages "probably result" from a breach:

> Can I talk to you for a second about probabilities? And you'll see this in Instruction 4. Here's the number one. This number one represents an absolute certainty, something is going to happen. Here's the number zero. This number represents an impossibility, it will not occur. Somewhere in between zero and one is probability, and Sonitrol wants you to believe that because of arson fire statistics, that they couldn't have predicted this. It's on the probability scale. It is probable that an arson fire will occur if you do not

detect a burglar in one of the buildings that you're monitoring. Sonitrol knows that from the testimony that we presented and based on their experience as a nationwide fire alarm company.

¶ 17 Sonitrol's attorney, in contrast, argued that probable and probably mean more likely than not. Specifically, Sonitrol's attorney said,

> And as John, my colleague, told you in the opening statement, there is a concept in these instructions that is fundamental under Colorado law for contracts. There's a word in there, a word that is so significant it actually appears twice in these instructions, and it's a word that basically Mr. Dunford ignored for almost the entirety of his closing, and that word is probably. Probable. Probably.
>
> Let's look through what this instruction says about what they have to prove to get general damages. First, general damages is the amount required to put the plaintiff in the same position. That's just the general definition. But here are the things they have to prove. "You may award general damages if you find that they are the natural and probable consequence of the defendant's breach."
>
> The breach here is the failure to detect these three burglars. So what would be the natural and probable consequence of the failure to detect burglars at a warehouse? But that's not the only place it's used. Let's keep going. It says that the defendant—you only get damages if the defendant reasonably could have foreseen at the time the parties entered into the contract and the damages would probably occur if defendant breached the contract. Not just that they're foreseeable, the types of things that might happen, could happen, sometimes happen, can happen, could occur, it's for things that will probably occur when there's a breach of this type.
>
> . . .
>
> Now let's talk a minute about probably. It's a pretty familiar concept to all of us. I think it's intuitive. What does probably mean? It means likely to happen. It means more than 50 percent chance. It's a concept so intuitive that even our kids

understand this. When I drop my kids' off at school in the morning, if I tell them, When I pick you up, we're probably going to get ice cream, and then I pick them up and we don't get ice cream, I better have a darn good explanation for why we didn't do it, because they're thinking when I drop them off, We're likely going to get ice cream.

And that's what this word "probably" means. It's the word that the plaintiffs would like you to ignore in these instructions. It's the word that Mr. Dunford didn't talk about at all. He talked about a scale of probabilities, zero to 100 percent. He didn't talk about probably.

Probably isn't 1 percent, it's not 5 percent. It's more than 50 percent. We all know that. And this is a concept that appears not just in this instruction, but in other instructions that the judge has given you.

So, for instance, you were given this instruction. One of your jury instructions says any finding of fact you make must be based on probabilities, not possibilities. Probabilities. Possibility is not a probability. Just because something might happen doesn't mean it's probably something that's going to happen.

¶ 18 Sonitrol's attorney then used a magnetic board to illustrate the concept, showing that theft was probable but that arson was not.[2] Counsel said that the burglars intended to steal cigarettes and cold medicine, and that the total value of the cigarettes and cold medicine in the warehouse was $2,750,000. As noted, the jury awarded Core–Mark that figure.

¶ 19 Core–Mark filed a motion for new trial under C.R.C.P. 59. As now relevant, Core–Mark argued that "[t]he issue remanded [in *Sonitrol II*] was whether the extent of the fire was foreseeable, not whether an arson fire was foreseeable" because the latter issue (1) had been decided by the jury in the first trial and (2) was beyond the scope of the *Sonitrol II* mandate. The district court de-

nied the motion without discussing the merits of these arguments.

### 2. Preservation

¶ 20 On appeal, Core–Mark argues that the district court erred in allowing Sonitrol to contest the foreseeability of the fire because (1) Sonitrol failed to appeal that issue in *Sonitrol II*; (2) the *Sonitrol II* mandate remanding the case precluded retrial of that issue; and (3) it was not fair to allow Sonitrol to retry the issue. Core–Mark premises the last argument on the court's authority under C.R.C.P. 59 (as construed in *Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913, 934 (Colo. 1997)) to order a new trial on only certain issues and on a statement in Sonitrol's reply brief in *Sonitrol II* that it was not "challeng[ing] the foreseeability of arson resulting in a fire at a warehouse," which Core–Mark characterizes as a "judicial admission."

¶ 21 We conclude that the only argument that Core–Mark preserved for appeal is that the issue of the foreseeability of the fire was outside the scope of the remand.

¶ 22 Core–Mark's motion in limine argued only that the law of the case doctrine barred retrial of the foreseeability of the fire because the *Sonitrol II* division had decided that issue.[3] In response, Sonitrol somewhat recast the argument as whether the mandate rule—which it characterized as part of the law of the case doctrine—barred retrial of the issue. The district court addressed the motion on those terms. Therefore, we conclude that the issue of the scope of the mandate remanding the case was preserved. *See Target Corp. v. Prestige Maint. USA, Ltd.,* 2013 COA 12, ¶ 23, 351 P.3d 493.

¶ 23 But Core–Mark never argued in the district court that Sonitrol's failure to appeal this specific foreseeability question waived the issue. Nor did Core–Mark ever argue in the district court that the court should limit the retrial in the interest of fairness as allowed by C.R.C.P. 59 and the

---

2. Counsel also argued that a "historic" fire of the extent that occurred at the warehouse was not foreseeable.

3. Core–Mark does not argue on appeal that *Sonitrol II* actually decided the foreseeability of the fire.

supreme court's decision applying that rule in *Gerrity Oil & Gas Corp.*

¶ 24 We do not consider "arguments never presented to, considered or ruled upon by" the district court. *Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n. 5 (Colo. 1992); *accord Farmer v. Raemisch*, 2014 COA 3, ¶ 5, 320 P.3d 394.

¶ 25 As for the judicial admission argument based on the statement in Sonitrol's reply brief in *Sonitrol II*, Core–Mark did not mention that statement until its reply brief in support of its post-trial C.R.C.P. 59 motion. And even then, Core–Mark did not argue explicitly that this statement qualified as a judicial admission. Thus, the argument was not preserved. *Fid. Nat'l Title Co. v. First Am. Title Ins. Co.*, 2013 COA 80, ¶¶ 49–51, 310 P.3d 272 (an argument first raised in a C.R.C.P. 59 motion is not preserved for appellate review); *Flagstaff Enters. Constr., Inc. v. Snow*, 908 P.2d 1183, 1185 (Colo. App. 1995) (an argument raised for the first time in a reply brief supporting a C.R.C.P. 59 motion is not preserved for appeal).

¶ 26 Core–Mark argues, however, that it preserved all of its arguments on appeal because it "repeatedly argued that the only issue properly before the [district] court was the foreseeable extent of Core–Mark's damages, not whether an arson fire was foreseeable." But that was not enough. To preserve an argument as to *why* a particular decision is appropriate, a party must timely raise that specific argument. *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 & n. 4 (Colo. App. 2011); *Cont'l W. Ins. Co. v. Heritage Estates Mut. Housing Ass'n*, 77 P.3d 911, 915 (Colo. App. 2003); *see also Estate of Stevenson*, 832 P.2d at 721 n. 5.

¶ 27 We therefore will consider only Core–Mark's argument that the issue of the foreseeability of the fire was outside the scope of the remand from *Sonitrol II*.

### 3. Standard of Review

¶ 28 Core–Mark's argument is one going to the admissibility of evidence; it raised the issue in a motion in limine seeking to preclude the introduction of evidence. We re-view a district court's decision allowing the admission of evidence for an abuse of discretion. *Wal–Mart Stores, Inc. v. Crossgrove*, 2012 CO 31, ¶ 7, 276 P.3d 562; *Walker v. Ford Motor Co.*, 2015 COA 124, ¶ 46, ⸻ P.3d ⸻; *Berenson v. USA Hockey, Inc.*, 2013 COA 138, ¶ 10, 338 P.3d 379. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *Salazar v. Kubic*, 2015 COA 148, ¶ 6, 370 P.3d 342.

¶ 29 Core–Mark's preserved contention that the district court incorrectly denied its motion in limine because it misinterpreted the scope of the mandate on remand presents an issue that we review de novo. *Hardesty v. Pino*, 222 P.3d 336, 339–40 (Colo. App. 2009); *see also McGillis Inv. Co., LLP v. First Interstate Fin. Utah, LLC*, 2015 COA 116, ¶¶ 57–58, 370 P.3d 295.

### 4. Analysis

¶ 30 Core–Mark's argument proceeds as follows:

1. *Sonitrol II* held that both the type and general magnitude of damages must be foreseeable for a plaintiff to recover.

2. *Sonitrol II* reversed and remanded for a new trial on damages because the district court had erroneously precluded Sonitrol from calling experts who would have testified as to the foreseeability of the extent of damages.

3. Therefore, the only issue within the scope of the mandate was the foreseeability of the extent of damages resulting from the fire.

4. "Arson" or "a burglary accompanied by arson" (Core–Mark uses differing terminology) is a "type" of damages.

5. So, the foreseeability of the fire was not within the scope of the mandate.

¶ 31 Core–Mark's argument fails for two reasons. First, arson (or burglary accompanied by arson) is not a type of damages: it may be a cause of a type of damages, but the type of damages at issue in this case is the value of the lost inventory (regardless of the direct cause of the loss). Second, the fore-

seeability of loss by fire was relevant to the foreseeability of the general magnitude of damages. Therefore, even if Core–Mark is correct that the *Sonitrol II* mandate limited the remand to the foreseeability of the extent of damages, its assertion that evidence of the foreseeability of loss by fire (even one set intentionally by a burglar) should have been excluded fails. To explain why we reach these conclusions, we first explain some relevant, fundamental principles of contract damages. Then we apply these principles to Core–Mark's preserved contention.

### a. Applicable Legal Principles

■ ¶ 32 The seminal case on the modern doctrine of foreseeability of contract damages is *Hadley v. Baxendale,* (1854) 156 Eng. Rep. 145, 9 Exch. 341. *See* 11 Joseph M. Perillo, *Corbin on Contracts* § 56.2, at 83 (rev. ed. 2005) (*Hadley* "has won universal acceptance in the common law world and remains the leading case" on contract damages); 3 E. Allan Farnsworth, *Farnsworth on Contracts* § 12.14, at 255 (3d ed. 2004) (*Hadley* is "[t]he fountainhead of the limitation of foreseeability" and "laid down general principles that are still honored today"). It set forth a test of foreseeability of contract damages, articulated in two rules. One, the nonbreaching party may recover damages for loss that "may fairly and reasonably be considered … arising naturally, i.e., according to the usual course of things, from [the] breach of contract itself." *Hadley,* 156 Eng. Rep. at 151, 9 Exch. at 354. Two, the nonbreaching party may also recover damages for loss that was "such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." *Id.*

¶ 33 These two categories of damages are commonly referred to as general and special damages, though special damages are often called consequential damages. *See Corbin on Contracts* § 56.2, at 84, § 56.6, at 104–06; *Farnsworth on Contracts* § 12.4, at 256–57; *see also* Restatement (Second) of Contracts § 351(1)-(2) & cmt. b (1981). It has been suggested that these two categories "differentiate between those cases in which there are no unusual circumstances and the se-

quence of breach and injury, as cause and effect, would be believed to be known to the ordinary person, and other cases in which there are unusual circumstances and there must be evidence that the defendant had reason to know them and to foresee the injury that has occurred." *Corbin on Contracts* § 56.6, at 105; *see also id.* § 56.6, at 107.

■ ¶ 34 Recovery of both categories is limited by the requirement of probability— the loss must have been foreseeable as the probable result of the breach. *Id.* § 56.2, at 85–86; *Farnsworth on Contracts* § 12.14, at 261; *see also* Restatement (Second) of Contracts § 351(1) & cmt. a. In that respect, the two *Hadley* rules "impose a more severe limitation on the recovery of damages for breach of contract than that applicable to actions in tort or for breach of warranty, in which substantial or proximate cause is the test." *Farnsworth on Contracts* § 12.14, at 258; *accord Vanderbeek v. Vernon Corp.,* 50 P.3d 866, 870 (Colo. 2002) ("Under either a tort or a contract standard, the foreseeability of the consequences is a factor. However, the test derived from *Hadley* imposes a more restrictive foreseeability limitation. To be recoverable under the *Hadley* test, consequential damages must be so likely that 'it can fairly be said' both parties contemplated these damages as the probable result of the wrong at the time the tort occurred. Under the tort standard, damages need only be reasonably foreseeable."); Restatement (Second) of Contracts § 351 cmt. a; *Corbin on Contracts* § 56.14.

¶ 35 As this case illustrates, sometimes confusion surrounds precisely what must be foreseeable. Several general principles originating from the *Hadley* test govern that inquiry.

● Losses that are a "natural" result of the breach are those an ordinary person of common experience would expect; "[s]uch a person would assume the circumstances to be those that have usually existed in similar cases within that person's experience." *Corbin on Contracts* § 56.6, at 104; *see* Restatement (Second) of Contracts § 351 cmt. b.

- Actual foresight is not required; the losses need only be reasonably foreseeable as a probable consequence of the breach by an ordinary person of common experience. *Corbin on Contracts* § 56.6, at 104; *Farnsworth on Contracts* § 12.14, at 259–60; *see Denny Constr., Inc. v. City & Cty. of Denver,* 199 P.3d 742, 751 (Colo. 2009).

- "[T]he injury actually suffered must be one of a kind that the defendant had reason to foresee and of an amount that is not beyond the bounds of reasonable prediction. . . ." The rule merely requires that the injury must be one of such a kind and amount as a prudent person would have realized to be a probable result of the breach." *Corbin on Contracts* § 56.7, at 108; *see also Vt. Yankee Nuclear Power Corp. v. Entergy Nuclear Vt. Yankee, LLC,* 683 F.3d 1330, 1344 (Fed. Cir. 2012).

- "There is no requirement that the breach itself or the particular way that the loss came about be foreseeable." *Farnsworth on Contracts* § 12.14, at 260–61.

- As noted, the loss must have been a foreseeable, though not a necessary or certain, result of the breach. *Id.* § 12.14, at 261; *see also* Restatement (Second) of Contracts § 351 cmt. a.

- "The mere circumstance that some loss was foreseeable, or even that some loss of the same general kind was foreseeable, will not suffice if the loss that actually occurred was not foreseeable." Restatement (Second) of Contracts § 351 cmt. a; *see also Farnsworth on Contracts* § 12.14, at 262.

- Foreseeability is judged by what was foreseeable when the contract was entered into. *Hadley,* 156 Eng. Rep. at 151, 9 Exch. at 354; Restatement (Second) of Contracts § 351 cmt. a; *Farnsworth on Contracts* § 12.14, at 260.

¶ 36 The Colorado Supreme Court long ago adopted the *Hadley* test for foreseeability of contract damages. *See W. Union Tel. Co. v. Trinidad Bean & Elevator Co.,* 84 Colo. 93, 96, 267 P. 1068, 1069 (1928). And the court continues to adhere to that test. *See Denny Constr.,* 199 P.3d at 750–51;

*Giampapa v. Am. Family Mut. Ins. Co.,* 64 P.3d 230, 240 (Colo. 2003). In *Sonitrol II,* the division explicitly applied one of the principles arising from the *Hadley* test—namely, that the breaching party "must have had reason to foresee both the type and the general magnitude of damages." *Sonitrol II,* ¶ 31.

b. Application

■ ¶ 37 We now turn to evaluating the merits of Core–Mark's contention that the district court erred in allowing Sonitrol to present evidence of the foreseeability of the fire because *Sonitrol II* remanded the case only on the issue of the foreseeability of "the general magnitude of damages."

¶ 38 Fundamentally, Core–Mark conflates the immediate cause of the loss with the type (or kind) of loss. Simply put, loss of inventory by fire and loss of inventory by some other immediate cause—say theft, vandalism, or water damage—are not different types or kinds of losses.

¶ 39 *Hadley* illustrates what is meant by a type or kind of loss in this context. The crankshaft of the steam engine that drove the plaintiff's mill broke. The plaintiff gave the broken crankshaft to a carrier to deliver to the manufacturer so that the manufacturer could supply a new one. The delivery was delayed, which resulted in the reopening of the mill being delayed by several days. The plaintiff sued the carrier for the loss of profits resulting from the delay. The court held that the plaintiff could not recover that type of damages—lost profits—because there was no evidence the carrier was or should have been aware of facts putting it on notice that any delay in delivering a replacement crankshaft would delay mill operations. *Compare Boston Edison Co. v. United States,* 80 Fed. Cl. 468 (2008) (diminution in the claimant's market value was a foreseeable type of loss resulting from the government's breach of a contract to dispose of spent nuclear fuel); *Denny Constr.,* 199 P.3d at 750–51 (contractor's lost profits were a foreseeable result of the city's breach of contract causing contractor to lose bonding capacity); *and Birkel v. Hassebrook Farm Serv., Inc.,* 219 Neb. 286, 363 N.W.2d 148, 152 (1985) (farmer's ex-

penses in finding alternative drying and storage facilities was a foreseeable type of damages resulting from breach of a contract to properly install a grain storage bin), *with Sabraw v. Kaplan*, 211 Cal.App.2d 224, 27 Cal.Rptr. 81, 83–84 (1962) (salary payments to a pharmacist by a drugstore developer were not a type of damages the contractor hired to build the drugstore should reasonably have foreseen as a result of a failure to complete the building on time).

¶ 40 In this case, the type or kind of losses at issue was the value of the lost inventory.[4] Applying some of the aforementioned principles, to recover some damages for loss of inventory, Core–Mark needed only to prove that the loss of inventory was foreseeable as a probable result of the breach.[5] The precise manner in which that loss occurred is not relevant to this inquiry. *Farnsworth on Contracts* § 12.14, at 260–61 ("There is no requirement that ... the particular way that the loss came about is foreseeable."). That is, to recover some damages for loss of inventory, Core–Mark was not required to prove that the fire itself was foreseeable. And therefore evidence of the foreseeability of the fire was not relevant to whether the loss of inventory was foreseeable, regardless of which party presented that evidence. Thus, even if Core–Mark is correct that the remand from *Sonitrol II* was limited to the issue of the foreseeability of the extent of Core–Mark's claimed damages, Core–Mark is incorrect that evidence of the foreseeability of the fire should have been barred because that evidence was relevant *only* to the foreseeability of the type of damages.

¶ 41 The foreseeability analysis could end here because, as discussed, Core–Mark only preserved its argument that evidence of the foreseeability of the fire was inadmissible because evidence of the foreseeability of the type of damages was foreclosed by the remand. But to head off any potential misunderstanding of our holding (or the division's holding in *Sonitrol II*), we address the rele-

vance of the evidence of the foreseeability of the fire as it relates to the foreseeability of the general magnitude of damages. And we conclude that the evidence was relevant to that issue.

¶ 42 Recall that Core–Mark had the burden of proving that the general magnitude of the claimed loss was foreseeable as the probable result of the breach.[6] To contest that element of Core–Mark's claim, Sonitrol was entitled to submit evidence showing the contrary. One way to do this was to show that the extent of the loss was the result of circumstances of which it was not aware or had no reason to be aware. Sonitrol tried to do this by presenting evidence of Core–Mark's failure to abide by building and fire code provisions regarding storage of flammable materials, the inadequacy of the sprinkler system, and, as most relevant for present purposes, the rarity of fires resulting from undetected burglaries. In our view, all of that evidence was relevant to demonstrate that the extent of Core–Mark's loss was not foreseeable.

¶ 43 A case cited in *Sonitrol II, Landmark Land Co. v. Federal Deposit Insurance Corp.*, 256 F.3d 1365 (Fed. Cir. 2001), makes the point, albeit on quite different facts. A company bought an insolvent savings and loan from the United States. The purchase contract required the company to contribute a certain amount of cash to the savings and loan. Later, the company contributed substantial additional assets to the savings and loan not because the contributions were required by the purchase contract, but for unrelated business reasons. Later, Congress passed a law that caused the United States to breach the purchase contract. The company sued the United States for losses equaling all of its capital contributions to the savings and loan.

¶ 44 The court held that the company could recover its initial capital contributions but not its later capital contributions, even

---

**4.** Core–Mark sought damages for other types of losses, but confines its argument to the largest category—loss of inventory.

**5.** It appears undisputed that this type or kind of loss was foreseeable.

**6.** We address the meaning of "probable" in this context in Part I.B.3. below.

though the possibility that the company might make additional capital contributions had been acknowledged in the purchase contract. The court explained that at the time of contracting the United States had no reason to foresee that the company would later contribute substantially all its assets to the savings and loan because such contributions were not required by the contract and had in fact been made for business reasons of which the government had no reason to be aware. *Id.* at 1374–79. Thus, while the type of loss—lost capital contributions—was foreseeable, the extent of the loss was not. And the precise reason for the later contributions was relevant to the latter conclusion. *Cf. Sunnyland Farms, Inc. v. Cent. N.M. Elec. Co-op., Inc.*, 301 P.3d 387, 394–95 (N.M. 2013) (in action by tomato grower against utility which had cut off electrical service to recover damages caused by a fire at the grower's facility, "[e]ven if some damage to the tomato crop was foreseeable from the disconnection of electricity, the particular damage that occurred was not").[7]

¶ 45 In sum, Core–Mark was required to prove that both the kind and the general magnitude of its claimed losses were foreseeable as the probable result of the breach. It was not required to prove that any particular cause of the losses was a probable result of the breach. But Sonitrol was also entitled to attempt to show that the circumstances resulting in the extent of the losses were not sufficiently foreseeable; evidence of the rarity of arson in this context was relevant to that issue.[8] We therefore conclude that the district court did not err in denying Core–Mark's motion in limine to bar such evidence.

### B. Foreseeability Instruction

#### 1. Procedural Background

¶ 46 We repeat the district court's instruction on foreseeability of damages:

General damages is the amount required to put the plaintiff in the same position as if the breach had not occurred. You may award general damages if you find that they were a natural and probable consequence of the defendant's breach of contract that the defendant reasonably could have foreseen at the time the parties entered into the contract and the damages would probably occur if defendant breached the contract.

If general damages have been proved, you shall award damages in the following categories:

- Inventory lost
- Fixed assets lost
- Accounts receivable lost
- Extra expenses
- Business income lost[.]

This instruction tracked a pattern instruction. *See* CJI–Civ. 30:28 (2015).

¶ 47 Core–Mark asked the district court to give an additional instruction defining the phrase "natural and probable consequence" in the pattern instruction. It read:

"Natural and probable consequence" means an act or failure to act which in the natural and probable sequence produced the claimed injury. It is a cause without which the claimed injury would not have been incurred.

Core–Mark argued that such an instruction had been approved by the supreme court in *Giampapa*. The district court rejected the instruction because (1) *Giampapa* "involved willful and wanton breach of [an] insurance contract and 'special damages'" but this case involves general damages, and (2) the proposed definition was "circular."

¶ 48 On appeal, Core–Mark contends that the district court erred in rejecting its tendered definitional instruction because without it Sonitrol was able to "mislead" the jury by asserting that Core–Mark was required to

---

7. It is questionable whether the damages sought qualified as general damages, as opposed to special or consequential damages. But that issue is not before us.

8. Core–Mark asserts that it was improper for Sonitrol to argue that Core–Mark was required to prove that a fire was a probable result of the breach. But because Core–Mark's counsel did not make any timely objection to that argument, or to any questions to any witnesses implying such a burden, any error in that regard is unpreserved. *Cruz v. Union Pac. R.R. Co.*, 707 P.2d 360, 362 (Colo. App. 1985).

prove that its claimed damages were likely to occur as a result of Sonitrol's breach. We reject this contention.

### 2. Standard of Review

¶ 49 Core–Mark urges us to review this issue de novo, characterizing it as whether the jury instructions, considered as a whole, accurately informed the jury of the governing law. *See Day v. Johnson,* 255 P.3d 1064, 1067 (Colo. 2011). But Core–Mark does not contend that the foreseeability instruction given incorrectly stated the law. *Id.* Nor does Core–Mark contend the instructions as a whole incorrectly stated the law. *Id.* Rather, it contends the district court erred in rejecting its additional instruction. We review that type of contention for an abuse of discretion. *Bedee v. Am. Med. Response of Colo.,* 2015 COA 128, ¶¶ 8–9, 361 P.3d 1083; *Leaf v. Beihoffer,* 2014 COA 117, ¶¶ 8, 10, 338 P.3d 1136; *see Day,* 255 P.3d at 1067 ("[W]e review a trial court's decision to give a particular jury instruction for an abuse of discretion."). A court abuses its discretion in this context if its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misunderstanding or misapplication of the law. *Bedee,* ¶ 9.[9]

### 3. Analysis

¶ 50 Core–Mark argues that "probable" does not mean likely in this context. That is, damages need not be the likely result of the breach to be recoverable. Core–Mark is incorrect. Its argument conflates the cause of the breach and the foreseeability of losses resulting from the breach. Core–Mark is correct that a plaintiff need not prove that a breach of the contract in a particular way at a particular time was more probable than not to recover for the breach. In this case, however, the breach was not, as Core–Mark contends, the fire, nor was the cause of the breach the fire. The breach was Sonitrol's failure to properly monitor its burglar alarm system, and the cause of that breach was Sonitrol's employees' inattentiveness and failures to follow proper procedures.

¶ 51 The losses were, primarily, the value of Core–Mark's lost inventory. As discussed, Core–Mark was required to prove that both the type of loss and the general magnitude of that loss were foreseeable. In proving such foreseeability, Core–Mark was required to prove that the loss was the *probable,* though not the necessary or certain, result of the breach. And in this context, probable means likely. *See Spang Indus., Inc. v. Aetna Cas. & Surety Co.,* 512 F.2d 365, 370 (2d Cir. 1975) ("[T]he [*Hadley*] rule does not require that the direct damages must necessarily follow, but only that they are *likely* to follow.") (emphasis added); *Sunnyland Farms,* 301 P.3d at 392 ("[T]he loss must have been foreseeable as the *probable* result of the breach, not merely as a possibility.") (emphasis in original); *see also Denny Constr.,* 199 P.3d at 751 (repeatedly phrasing the foreseeability test in terms of whether certain damages would "probably" result from the breach); *Giampapa,* 64 P.3d at 244 (approving a jury instruction that said damages were recoverable if they "would probably be incurred" upon breach); *Vanderbeek,* 50 P.3d at 870–71 (discussing that the contract test of foreseeability of damages is more restrictive than the tort test); Restatement (Second) of Contracts § 351 cmt. a; *Farnsworth on Contracts* § 12.14, at 261–62 & n.21; 24 Richard A. Lord, *Williston on Contracts* § 64:13, at 137 (4th ed. 2002) ("[F]or breach of contract the defendant is liable only for consequences that were reasonably foreseeable, at the time the contract was made, as *likely* to result if the contract were broken.") (emphasis added).

¶ 52 Thus, because Core–Mark's contention is premised on an erroneous view of the law, we are not persuaded that its proposed instruction was warranted. That instruction arguably conflated causation and foreseeability and did not explain, consistent with the law, that probable means more likely than not. It follows that the district court did not

---

**9.** Of course, to the extent Core–Mark's contention requires us to determine the law that applies

in this context, our review is de novo.

abuse its discretion in rejecting that instruction.[10]

¶ 53 Nor are we persuaded to the contrary by Core–Mark's argument that the supreme court approved its proposed instruction in *Giampapa*. In that case, the supreme court arguably approved of an instruction on special damages that told the jury the plaintiff was required to show that those damages "would *probably* be incurred by the plaintiff if the defendant breached the contract." 64 P.3d at 244 (emphasis added). But the supreme court merely observed that the district court had given an additional instruction similar to that tendered by Core–Mark; it did not approve the additional instruction. *Id.* at 244 n. 11.

¶ 54 Core–Mark argues that it was harmed by the district court's refusal to give the jury its proposed instruction in that the language of the pattern instruction allowed Sonitrol's counsel to argue that, because the fire was not likely to result from a breach, the losses were not the probable result of the breach. We conclude that this argument is not preserved for our review.

¶ 55 In essence, Core–Mark argues that Sonitrol's counsel misstated the law in closing argument. Core–Mark's counsel, however, did not object to any of the statements to which Core–Mark now points. Therefore, we will not consider this argument. *Clough v. Williams Prod. RMT Co.*, 179 P.3d 32, 39 (Colo. App. 2007); *Cruz*, 707 P.2d at 362 (counsel's failure to object to questions asked or remarks in closing waived any claim of error).

### C. Exclusion of Evidence of Sonitrol's Conduct

¶ 56 Core–Mark contends that the district court erred by excluding evidence admitted in the first trial detailing the nature of Sonitrol's breach of contract and by refusing to inform the jury that the first jury found that Sonitrol's breach was willful and wanton. We are not persuaded.

### 1. Background

¶ 57 On remand, the district court ruled that, since Sonitrol's liability was no longer an issue, the "testimony regarding the events surrounding the burglary and fire d[id] not need to be so descriptive and must be significantly truncated." The district court read a statement of the case to the jurors at the outset of the trial. The statement provided a timeline of the burglary and Sonitrol's employees' failures, and explained that a prior jury had found that Sonitrol's failure to detect and respond to the burglary was a breach of its contract with Core–Mark. The court told the jurors that they would need to decide the amount of Core–Mark's damages that were caused by Sonitrol's breach. The court drafted this statement from proposed statements submitted by Core–Mark and Sonitrol.

¶ 58 The district court did not allow one of Core–Mark's experts to testify because his proposed testimony concerned the origin and cause of the fire and, thus, was relevant to the determination of liability but not damages. The court also required that the testimony of another Core–Mark expert be limited to describing the alarm system at the warehouse, explaining what happened with the alarm system during the break-in, and opining on the foreseeability of loss based on a nonfunctioning alarm system. The district court did not allow Core–Mark to present evidence of Sonitrol's actions in the weeks prior to the burglary (such as decreasing the sensitivity of microphones in the warehouse and ignoring the alarm system's error messages). The court also refused to tell the damages jury that the first jury found that Sonitrol's breach was willful and wanton.

### 2. Standard of Review and Applicable Law

¶ 59 We review a district court's decision to exclude evidence for an abuse of discretion. *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 523 (Colo. App. 2011). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or based on a misapprehension of the law. *Battle N., LLC*

---

10. We also agree with the district court that the proposed instruction is "circular" in that it characterizes a cause of the breach as the natural and probable consequence of the breach. For that reason as well, the instruction incorrectly stated the law.

*v. Sensible Housing Co.*, 2015 COA 83, ¶ 17, 370 P.3d 238. However, even if a district court erroneously excludes evidence, we will not reverse unless a substantial right of a party was affected by the error. *Genova v. Longs Peak Emergency Physicians, P.C.*, 72 P.3d 454, 459 (Colo. App. 2003).

¶ 60 Under CRE 402, all relevant evidence is generally admissible unless otherwise prohibited by a rule of evidence. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of issues, or misleading the jury. CRE 403.

### 3. Analysis

¶ 61 Core–Mark argues that the district court should have allowed testimony about details of Sonitrol's breach, including its conduct before the burglary, because that evidence was relevant to the foreseeability of the fire and the extent of Core–Mark's damages. Specifically, Core–Mark contends that the following evidence should have been admitted:

- Before the burglary, "Sonitrol compromised the burglar alarm system by decreasing the sensitivity of and failing to recalibrate several microphones in the warehouse," and in the weeks prior to the burglary, Sonitrol's employees ignored error messages from the alarm system.
- The burglars were in the warehouse for several hours making loud noises, and during the burglary Sonitrol's employees ignored four alarm system activations and did not listen to available audio.[11]
- The first jury found that Sonitrol's breach of contract was willful and wanton.

¶ 62 We are not persuaded that additional evidence of Sonitrol's conduct prior to the

burglary, or the first jury's finding that Sonitrol's breach was willful and wanton, was relevant to the determination of Core–Mark's compensatory damages.

¶ 63 The central issue before the damages jury was how much of Core–Mark's claimed damages were foreseeable from Sonitrol's breach of contract. As discussed above, the damages must have been foreseeable at the time of contracting. Though evidence of Sonitrol's prior conduct, such as turning down the microphone sensitivity and ignoring error messages from the alarm system, was relevant to whether Sonitrol breached the contract and whether the breach was willful and wanton, it was not relevant to the foreseeability of Core–Mark's damages at the time of contracting.[12]

¶ 64 Similarly, facts related to Sonitrol's failure to detect the burglary itself were relevant only to give the jury some background. The court gave the jury a somewhat detailed timeline of the burglary, which told the jury that Sonitrol's employees had ignored multiple alarms set off by the burglars; the burglars were in the warehouse undetected, making loud noises, for several hours; and a passerby, not Sonitrol, made the first call to 911 reporting the fire. Further, the burglar who set the fire testified by deposition as to some details of the break-in.

¶ 65 We conclude that the jury had ample detail of Sonitrol's breach to understand the context of what it was called to decide—Core–Mark's compensatory damages. *See Genova*, 72 P.3d at 458 (district court did not abuse its discretion by excluding evidence that was irrelevant and would have confused the jury).

### III. Sonitrol's Cross–Appeal and Conditional Cross–Appeal

¶ 66 Sonitrol contends that *Sonitrol I* and *Sonitrol II* incorrectly held that, if its conduct was willful and wanton, the limitation of liability clause provision in the contract was unenforceable. Though we are not bound by

---

11. This evidence was presented to the jury, but apparently not in the degree of detail Core–Mark desired.

12. Sonitrol's prior misconduct would have been relevant to determining punitive damages, but such damages were not available in this case.

those prior decisions, *see Sonitrol II,* ¶¶ 10–11, we see no reason to reconsider the issue they addressed.[13]

¶ 67 Sonitrol conditionally contends that, in the event we reverse and remand for a new trial, we consider whether the district court erred in allowing Core–Mark to seek $5,000,000 for a claim on which Sonitrol had prevailed at an earlier stage of the case. Because we do not reverse and remand for a new trial, Sonitrol's conditional cross-appeal is moot. Accordingly, we dismiss it. *See Town of Foxfield v. Archdiocese of Denver,* 148 P.3d 339, 347 (Colo. App. 2006).

## IV. Conclusion

¶ 68 The judgment is affirmed and Sonitrol's conditional cross-appeal is dismissed.

JUDGE BOORAS concurs.

JUDGE WEBB specially concurs.

JUDGE WEBB, specially concurring.

¶ 69 While concurring in the result, I would resolve the scope of remand/foreseeability evidence of arson issue more narrowly.

¶ 70 To begin, the division in *Core–Mark Midcontinent, Inc. v. Sonitrol Corp.,* 2012 COA 120, ¶ 40, 300 P.3d 963 (*Sonitrol II*), reversed and remanded "for a new trial on damages." This statement is unrestricted. But the division also said, "[w]e assume that Sonitrol could have foreseen that if it failed to detect a break-in at the warehouse, a burglar could start a fire." *Id.* at ¶ 32. Thus, the decision could reasonably—but by no means necessarily—be read as having resolved whether arson was foreseeable. In turn, this reading would limit a "new trial on damages" and require that such foreseeability evidence have been excluded from the retrial, as Core–Mark argues. Hence, I view the scope of the remand as ambiguous.

¶ 71 But this ambiguity differs from ambiguity in a contract, which must be resolved by extrinsic evidence of the parties' intent. And because such evidence is often disputed, resolution of contractual ambiguity is a factual determination subject to reversal only if clearly erroneous. *See, e.g., Rocky Mountain Health Maint. Org., Inc. v. Colo. Dep't of Health Care Policy & Fin. ex rel. Rizzuto,* 54 P.3d 913, 919 (Colo. App. 2001) ("Once a contract is determined to be ambiguous, its interpretation becomes an issue of fact for the trial court to decide in the same manner as other disputed factual issues, and the trial court's findings of fact may only be disturbed when they are so clearly erroneous as to find no support in the record.") (citation omitted).

¶ 72 More analogous would be an ambiguous statute, where the extrinsic evidence—typically legislative history—is indisputable and can be the subject of judicial notice. *People v. Bradley,* 66 Colo. 186, 189, 179 P. 871, 872 (1919) ("[W]e may take judicial notice of the history of the legislation."). Statutory ambiguity is subject to de novo review. *See, e.g., Mounkes v. Indus. Claim Appeals Office,* 251 P.3d 485, 487 (Colo. App. 2010) ("[W]e review de novo the Panel's determination, reached without elaboration or analysis, that section 8–73–108(5)(e)(VII) is not ambiguous[.]").

¶ 73 The analog to using legislative history to resolve the ambiguity in *Sonitrol II* would be considering the parties' briefs in the prior appeal and perhaps any concessions they made in their oral arguments. Such materials are also not subject to dispute. But resolving the ambiguity in *Sonitrol II* is not so simple as looking at the parties' appellate briefs and any concessions in oral arguments.

¶ 74 As the majority points out in the preservation context—and I agree—while the parties asked the trial court to determine the scope of the remand, they argued only within the four corners of *Sonitrol II.* Thus, looking further to resolve the ambiguity would conflict with "basic principle of appellate jurisprudence" that, at least in civil cases, appellate courts consider only those arguments raised below. *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.,* 2012 CO 61, ¶ 18, 287 P.3d 842.

¶ 75 Whether deference to this principle limits appellate consideration of materials within the ambit of judicial notice but not

---

**13.** Sonitrol's "argument" on this point is two short paragraphs. It is not developed sufficiently

to require us to address it. *Barnett v. Elite Props. of Am., Inc.,* 252 P.3d 14, 19 (Colo. App. 2010).

raised in the lower court is undecided in Colorado. Instead of doing so, I would resolve the scope of remand/foreseeability evidence of arson issue by applying two principles concerning retrials.

¶ 76 First, where reversal requires a retrial, the scope of the retrial should be limited only "in those infrequent cases where it is certain and plain that the error which has crept into one element of the verdict by no means can have affected its other elements." *Belcaro Realty Inv. Co. v. Norton*, 103 Colo. 485, 493–94, 87 P.2d 1114, 1118 (1939) (citation omitted). The complete retrial alternative considered and ultimately rejected in *Belcaro* could be compared with a complete retrial of all damages issues here. Then applying the cautionary language in *Belcaro*, *Sonitrol II* fails this certainty test for limiting the retrial to only some damages issues.

¶ 77 Second, and even if the analogy to *Belcaro* is less than compelling, on retrial, the trial court "is to look to the mandate for any limitations on the scope of the remand and, in the absence of such limitations, exercise discretion in determining the appropriate scope." *Dish Network Corp. v. Arrowood Indem. Co.*, 772 F.3d 856, 864 (10th Cir. 2014) (citation omitted).[1] Again, ambiguity in the mandate afforded the trial court discretion to allow retrial of all damages issues, which it did. And I could not say that the court abused its discretion in declining to treat as the law of the case the prior division's "assum[ption] that Sonitrol could have foreseen that if it failed to detect a break-in at the warehouse, a burglar could start a fire." *Sonitrol II*, ¶ 32; *see* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 4478, at 655–56 (2d ed. 2002) ("A position that has been assumed without decision for purposes of resolving another issue is not the law of the case[.]").

---

**1.** To the extent that the majority's citation to *Hardesty v. Pino*, 222 P.3d 336, 339–40 (Colo. App. 2009), and *McGillis Inv. Co., LLP v. First Interstate Fin. Utah, LLC*, 2015 COA 116, ¶¶ 57–58, 370 P.3d 295, suggests otherwise, neither of these cases involved a facially ambiguous mandate.