25CA0869 Marriage of Cooper 01-22-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0869
Pueblo County District Court No. 18DR98
Honorable Dorothy A. Radakovich, Magistrate
Honorable Tayler M. Thomas, Judge

In re the Marriage of

Evelynn Harmes,

Appellee,

and

Harry Cooper,

Appellant.

APPEAL DISMISSED IN PART AND ORDER AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Brown and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 22, 2026

No Appearance for Appellee

Harry Cooper, Pro Se

¶ 1     In this post-dissolution of marriage case between Harry Cooper (father) and Evelynn Harmes (mother), father appeals the district court's adoption of the magistrate's denial of his motion to modify parental responsibilities. We dismiss the appeal in part and affirm the order.

## I.     Relevant Facts

¶ 2     The parties' marriage ended in 2018. At that time, the district court designated mother as the child's primary residential parent and granted father two overnights a week. The parties agreed that mother would have sole decision-making responsibility.

¶ 3     Within a year, mother filed a motion to restrict father's parenting time. In it, she alleged, among other things, that he had not exercised parenting time for several weeks, had failed to provide her with a current address, and was "unreachable."

¶ 4     A magistrate temporarily restricted father's parenting time, requiring that it be supervised by an unrelated third party. The magistrate set an evidentiary hearing for October 11, 2019, and directed mother to "properly serve" father with her motion and the order.

¶ 5     At the hearing, mother appeared, and father did not.  The magistrate found that

- father had an outstanding arrest warrant;

- father was evicted from his former residence and was residing at a place that was unsafe for the child due to unfinished floors with exposed nails and the presence of asbestos;

- father failed to keep the court informed of his current address;

- when the child returned from parenting time with father, the child had numerous flea bites, and he had ignored the child's medical needs;

- father had arrived at parenting time exchanges driving despite not having a valid license; and

- father had no parenting time with the child for approximately one month.

¶ 6     From those findings, the magistrate determined that the child was in imminent danger while in father's care and restricted his parenting time to supervised visits at a facility.  Father never

contacted the facility or scheduled any visits.  Father did not appeal the magistrate's order.

¶ 7     About four years later, father filed a motion to modify, asking the court to name him the sole residential parent for the then-six-year-old child, order mother's parenting time be supervised, and grant him sole decision-making responsibility.

¶ 8     In February 2025, following an evidentiary hearing, the magistrate denied the motion and continued the restriction on father's parenting time.  The magistrate found that the child was not endangered in mother's care.  The magistrate further found that father had been largely absent from the child's life for the last four years, did not know how to take care of the child's needs, and had recently tested positive for methamphetamines.

¶ 9     Then, father, without timely providing a hearing transcript, petitioned the district court for review of the magistrate's order.  Unpersuaded by father's arguments, the court adopted the magistrate's decision.

¶ 10     After filing his notice of appeal, father moved to supplement the record to include the transcript.  This court issued a limited remand order, directing the district court to determine whether the

absence of the transcript was through no fault of father and whether the prior order should be amended.

¶ 11    On remand, the district court found that father was diligent in trying to obtain the transcript and that its absence was not his fault.  The court found that "that the facts necessary for review purposes are undisputed and within the court records" and therefore a transcript [was] not necessary for review" of the magistrate's order.  The court therefore declined to amend the prior order.

¶ 12    This court, on its own initiative, added the transcript to the appellate record.

## II.    Appellate Standard of Review

¶ 13    Our review of a district court's adoption of a magistrate's decision is effectively a second layer of appellate review, and we must accept a magistrate's factual findings unless they are clearly erroneous.  *In re Marriage of Thorburn*, 2022 COA 80, ¶ 25; *see* C.R.M. 7(a)(9).  A court's factual findings are clearly erroneous only if there is no record support for them.  *Thorburn*, ¶ 25.  Legal conclusions, however, are reviewed de novo.  *See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 11.

### III. Discussion

#### A. Hearing Transcript

¶ 14    Normally, when reviewing a district court order adopting a magistrate's decision, we do not consider a hearing transcript that was not submitted to the district court. *See In re Marriage of Dean*, 2017 COA 51, ¶ 14. Here, however, we elect to do so given the additional proceedings on remand, the district court's finding that the absence of the transcript was not attributable to father, and our inability to discern whether the court, in fact, reviewed the transcript.

#### B. Sufficiency of Findings

¶ 15    Father contends that the magistrate did not make specific findings when it denied his request to modify parental responsibilities. We disagree.

¶ 16    A court has broad discretion when modifying parenting time and decision-making responsibility, and "we exercise every presumption in favor of upholding its decisions." *In re Marriage of Wenciker*, 2022 COA 74, ¶ 26. A court abuses its discretion when it misapplies the law or acts in a manifestly arbitrary, unfair, or

unreasonable manner. *In re Marriage of Pawelec*, 2024 COA 107, ¶ 45.

¶ 17    A modification of parenting time that substantially changes parenting time and changes the parent with whom the child resides the majority of the time requires a finding that there has been a change in the circumstances of the child or of the party with whom the child resides a majority of the time and that the modification is necessary to serve the child's best interests. § 14-10-129(2), C.R.S. 2025. In making this determination, a court must consider all relevant factors, including those listed in section 14-10-124(1.5)(a), C.R.S. 2025. The court need not make specific findings on all statutory factors. *Pawelec*, ¶ 44. That said, the court's findings must be sufficiently explicit to give us a clear understanding of the basis of the order. *Id*

¶ 18    Additionally, when considering such a modification, a court must retain the existing parenting time order unless the child's present environment endangers the child's physical health or significantly impairs the child's emotional development and the harm likely to be caused by a change in residence is outweighed by the advantage of the change. § 14-10-129(2)(d); *see also In re*

*Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶¶ 19-21 (describing required three-step analysis starting with presumption that the prior order remains in effect).

¶ 19    Likewise, a court may modify an order of decision-making responsibility if it finds that "a change has occurred in the circumstances of the child" or the parent with decision-making authority, and "the modification is necessary to serve the best interests of the child." § 14-10-131(2), C.R.S. 2025.  The court must also retain the existing decision-making responsibility order unless doing so would endanger the child's physical health or significantly impair the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage to the child.  § 14-10-131(2)(c).

¶ 20    In denying father's motion to modify, the magistrate made the following findings:

- Currently, the child was receiving appropriate medical treatment in mother's care and was performing well in school.

- The child was also participating in ongoing mental health counseling.

- Father decided not to show up for the restriction hearing in October 2019 because he had an outstanding warrant and feared that he would be arrested.

- Father chose to be estranged from the child for more than four years rather than address the issues that led to his parenting time restriction.

- Father had minimal interactions with the child since 2019, had one contact with the child after July 2020, and never exercised supervised parenting time as ordered by the court.

- Given this limited contact, father lacked knowledge of the child's current needs.

- Father tested positive for methamphetamines in October 2024 and had not attempted to undergo a substance abuse evaluation to determine whether treatment was appropriate.

- Father presented no evidence demonstrating that the restriction on his parenting time should be lifted.

- In 2021, mother was convicted of class one misdemeanor child abuse, misdemeanor driving under the influence, and felony vehicular assault.

- Mother served a jail sentence, had remained sober since the car accident, was compliant with probation, and had completed the required alcohol education and treatment.

- Father failed to prove that mother perpetrated domestic violence.

¶ 21 So, contrary to father's contention, the magistrate's findings are sufficient as they clearly explained the basis for denying his request for sole parental responsibilities — that is, the child was not endangered in mother's care and father had not spent much time with the child in the last four years, did not know the child's needs, and had recently tested positive for methamphetamines. Because the record supports those findings, we cannot say that the court erred in this regard. *See Wenciker*, ¶ 26.

¶ 22 Father relatedly asserts that the magistrate ignored evidence and "minimalized" mother's criminal history. We presume, however, that the magistrate considered all the evidence admitted. *In re Marriage of Collins*, 2023 COA 116M, ¶ 21 (an appellate court

9

may presume that the district court considered all the evidence admitted).  And to the extent he challenges the weight the magistrate accorded to the evidence in its best interests analysis and asks us to reweigh it in his favor, we will not do so.  *See In re Marriage of Nelson*, 2012 COA 205, ¶ 35 (When reviewing for an abuse of discretion, even where "there is evidence in the record that could have supported a different conclusion, we will not substitute our judgment for that of the district court."); *see also Thorburn*, ¶ 49 (it is for the district court to determine witness credibility and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom).

## C.    Domestic Violence

¶ 23    Father contends that the magistrate erred by denying his request for sole decision-making responsibility because the magistrate did not consider certain evidence of mother's alleged domestic violence against him during the marriage in violation of section 14-10-124(1.5)(4)(a)(II) (the district court must consider the history of domestic violence when allocating decision-making responsibility).

¶ 24　We will not address the issue now because father did not argue it before the magistrate. *See Pawelec*, ¶ 38 (stating that to preserve an issue for appeal, it must be presented in such a way that the district court has an opportunity to rule on it); *see also Core-Mark Midcontinent Inc. v. Sonitrol Corp.*, 2016 COA 22, ¶ 26 (only specific arguments made to the district court are preserved for appeal).

¶ 25　At the modification hearing, father attempted to admit an arrest record concerning mother. The magistrate questioned the relevance of any allegations predating the 2018 dissolution decree and explained that any domestic violence issue should have been raised before the parties stipulated to joint decision-making responsibility. He did not challenge the court's view that the exhibit was irrelevant. Instead, he responded, "Okay, I understand," and, "Absolutely Your Honor." As well, when asked if he had any witnesses with personal knowledge to testify that mother committed domestic violence against him, he answered no.

## D. Drug Test Results

¶ 26　Next, father contends that the magistrate erred by admitting his drug test results without "foundation." Specifically, he

challenges the admission of the results based on chain of custody, testing methodology, the absence of testimony from a supporting witness, and hearsay. Again, because he did not raise those issues before the magistrate, we will not consider them.

¶ 27    At the hearing, father did object to the admission of his drug test results, yet his objection was limited to a different ground. He asserted that the results should be excluded because mother allegedly misrepresented that the magistrate had ordered him to submit to testing. That is a different issue than what he is arguing on appeal. Moreover, his appellate issues were not raised in his petition for review. *See People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006) (a party appealing a magistrate's decision must first raise a particular issue in the district court in a petition for review and thereby allow the court to correct any error before raising the issue on appeal).

¶ 28    We also decline to address father's related argument that the magistrate's written order, which stated that the test was not court ordered, created "confusion" about the "test's validity." He offers no legal analysis explaining how this alleged error warrants reversal or how it affected the admissibility of the evidence. *See In re Marriage*

12

*of Zander*, 2019 COA 149, ¶ 27 (an appellate court may decline to consider an argument not supported by legal authority or any meaningful legal analysis), *aff'd*, 2021 CO 12.  As a result, the argument is undeveloped, and we do not address it.

## E.    Bias

¶ 29    Father contends that the magistrate was biased against him. To get there, he says that the magistrate did not rule on his pretrial motion to strike, issued contradictory orders, admitted mother's allegedly "unauthenticated" testimony, and excluded evidence he claims was properly authenticated.  But adverse legal rulings, standing alone, do not establish grounds for prejudice or bias.  *In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007); *see People v. Schupper*, 124 P.3d 856, 859 (Colo. App. 2005) (the propriety of a district court's rulings, whether right or wrong, is not relevant in determining recusal issues), *aff'd*, 157 P.3d 516 (Colo. 2007).

¶ 30    Father also points to the magistrate's statement that "you were trying to keep the court from seeing a hot drug test," as evidence of bias.  Judicial comments made during the proceedings, however, do not establish bias unless they show a deep-seated favoritism or antagonism that would render fair judgment impossible.  *See In re*

13

*People In Interest of A.P.*, 2022 CO 24, ¶ 31; *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.").

¶ 31    The magistrate's statement appeared to arise from an evidentiary dispute and, by itself, does not reflect the sort of bias that would prevent a fair decision. *See Hatton*, 160 P.3d at 330; *A.P.*, ¶ 31; *see also People v. Jennings*, 2021 COA 112, ¶ 28 (the record must clearly demonstrate the judge's actual bias).

¶ 32    Father insists that during the modification hearing, the magistrate showed bias by playing an audio recording of a prior ruling. We disagree. The magistrate played the recording to simply clear up a disagreement over what the magistrate previously ordered. Father never objected, and nothing about the magistrate's conduct suggests favoritism or hostility. *See Jennings*, ¶ 28.

## F.    Constitutional Claims

¶ 33    Father contends that the magistrate violated his due process or fundament rights to present his case by (1) failing to rule on his pretrial motions; (2) admitting mother's "unauthenticated" evidence

while excluding his properly "authenticated" evidence; (3) barring his evidence of mother's domestic violence; and (4) using "surprise evidence tactics." Because he did not raise those specific complaints in his petition for review, we will not address them. *See K.L-P.*, 148 P.3d at 403; *Core-Mark Midcontinent Inc*, ¶ 26.

¶ 34 True, he argued in his petition for review that the magistrate denied him a "fair opportunity to present his case" by refusing to hear evidence of domestic violence that occurred before the dissolution decree. But that argument was framed narrowly and factually. He did not mention a due process violation, invoke fundamental rights, or otherwise alert the district court that he was asserting a constitutional claim.

## G. Fraud on the Appellate Court

¶ 35 Father contends that the "district court" committed fraud on this court by falsely certifying the appellate record as complete and stating that no transcripts had been prepared, even though, according to him, the hearing transcript had been completed and delivered to the district court. In other words, he asserts that this misrepresentation was intended to prevent this court from reviewing the full record of the proceedings below. He cites two

15

cases for the general proposition that fraud on the court undermines the integrity of the judicial process and requires corrective action. However, he does not discuss any relevant facts or provide any legal analysis applying the facts and law. *See Zander*, ¶ 27; *see also Cikraji v. Snowberger*, 2015 COA 66, ¶ 10 (an appellate court will not comb the record for facts to support undeveloped arguments). Thus, we decline to address the issue. And we note that the transcript is part of the record, and we were able to review the portions relevant to his contentions.

## H. District Court Review

¶ 36 We reject father's contention that the district court committed "structural error" by merely "rubber-stamp[ing]" the magistrate's decision and failed to conduct an independent analysis. Our review of the court's order shows that it adequately considered and addressed the alleged errors in his petition for review.

## I. October 19, 2019, Order

¶ 37 Last, father contends that the October 19, 2019, order should be void because he was not properly served, lacked notice of the restriction hearings, and therefore the court did not have personal jurisdiction over him. He maintains that mother allegedly engaged

in fraudulent service of process by providing an incorrect address for him despite knowing his true whereabouts. We conclude that the issue is moot.

¶ 38 While an order entered without jurisdiction is void and may be challenged on that basis at any time, an appellate court will not address the merits of an issue when subsequent events have rendered the issue moot. *In re Marriage of Tibbetts*, 2018 COA 117, ¶ 7. An issue is moot when the relief requested, if granted, would have no practical effect on an existing controversy. *See In re Marriage of Thomas*, 2021 COA 123, ¶ 21.

¶ 39 The restriction order father challenges has been superseded by the district court's current order, which we have already determined is proper. The restriction order is no longer operative and does not govern the parties' present rights or responsibilities. Even if we were to accept his contention that the restriction order was entered based on defective service and should therefore be declared void, that determination would not alter the existing order. Because the restriction order has been replaced and no longer has any legal effect, granting him the relief he seeks would have no practical effect. *See id.* Accordingly, we dismiss this portion of the appeal.

## IV. Disposition

¶ 40     We dismiss the part of the appeal challenging the October 19, 2019, order.  Otherwise, we affirm the district court's order adopting the magistrate's denial of father's motion to modify parental responsibilities.

JUDGE BROWN and JUDGE SCHUTZ concur.