Jack J. GRYNBERG, individually and d/b/a Jack Grynberg and Associates; Grynberg Petroleum Company; and Celeste C. Grynberg, an individual, Plaintiffs–Appellants,

v.

COLORADO OIL AND GAS CONSERVATION COMMISSION; Marilyn B. Bateman, f/k/a M.B. Tate; and R.K. Cramer, a/k/a Richard K. Cramer, Defendants–Appellees.

No. 98CA1928.

Colorado Court of Appeals, Div. II.

Dec. 23, 1999.

Certiorari Denied Aug. 21, 2000.*

Phillip D. Barber, P.C., Phillip D. Barber, Denver, Colorado; Dufford & Brown, P.C., Lisa A. Lee, Denver, Colorado, for Plaintiffs–Appellants.

Opinion by Judge CRISWELL.

In this action to review a decision of the Colorado Oil and Gas Commission (Commission), plaintiffs, Jack J. Grynberg, individually and d/b/a Jack Grynberg and Associates, Celeste C. Grynberg, and Grynberg Petroleum Company, seek reversal of the district court judgment that affirmed the Commission's conclusion that the Commission lacked jurisdiction to interpret the terms of an oil and gas lease between plaintiffs and defendants, Marilyn B. Bateman and Richard K. Cramer. We affirm.

Plaintiffs are the operators and defendants are the royalty owners of an interest in an oil and gas property. A dispute arose between them with respect to whether plaintiffs were entitled under the terms of the lease to deduct certain post-production expenses in computing the royalties due to defendants.

Defendants initially commenced an action at law to recover royalties from plaintiffs. Later, however, they filed an application with the Commission pursuant to § 34–60–118.5, as it existed prior to recent amendments, *see* Colo. Sess. Laws 1998, ch. 186 at 636, to have the Commission determine the amount of royalties owed by plaintiffs, and the district court stayed its proceedings, pending final action by the Commission.

The Commission, however, concluded that, while the pertinent statute authorized it to ensure timely payments to those legally entitled to such payments, it lacked jurisdiction to adjudicate private disputes related to the legality of specific deductions, which disputes would require "an interpretation of the instruments creating the [royalty] interests." Hence, it dismissed defendants' application without prejudice to defendants' right to re-apply for relief from it once the dispute over the propriety of such deductions had been resolved either by the stipulation of the parties or by decision of a court of competent jurisdiction.

Plaintiffs sought judicial review of this order, asserting that the Commission erred in declining to assert jurisdiction over this dispute. The district court affirmed the Commission's action, and plaintiffs now appeal from that judgment.

I.

Plaintiffs contend that § 34–60–118.5(5) granted to the Commission exclusive jurisdiction to resolve their dispute with defendants and that the district court erred by concluding otherwise. We disagree.

Section 34–60–118.5(2), C.R.S.1999, requires that payments of proceeds derived from the sale of oil, gas, or associated products be made in a timely fashion. Section 34–60–118.5(5), then, provided that the Commission "shall have exclusive jurisdiction" to determine the following:

(a) The date on which payment of proceeds is due a payee under subsection (2) of this section;

(b) The existence or nonexistence of an occurrence pursuant to subsection (3) of this section which would justifiably cause a delay in payment; and

(c) The amount of the proceeds plus interest, if any, due a payee by a payor.

Section 34–60–118.5 imposed an obligation on the part of "payors" to make timely payments of proceeds to "payees," and it granted the Commission exclusive jurisdiction to enforce compliance with that requirement. A "payee," as that term is used in § 34–60–118.5, is "any person or persons *legally entitled* to payment from proceeds derived from the sale of oil, gas, or associated products from a well in Colorado...." Section 34–60—118.5(1)(a), C.R.S.1999 (emphasis added).

Hence, while this statute makes clear that the Commission can order a payment be made only to one who is "legally entitled" to that payment, it does not make clear which tribunal, either the court or the Commission,

determines whether there is legal entitlement to payment in any specific instance. To this extent, therefore, the statute may be said to be ambiguous.

■ Under such circumstances, the interpretation placed upon a statute by the agency vested with authority to administer or to enforce that statute is entitled to deference, provided the interpretation adopted is a reasonable one. *See Industrial Claim Appeals Office v. Orth,* 965 P.2d 1246 (Colo.1998).

Here, not only was the Commission's interpretation of the statute reasonable; we conclude that it was the proper interpretation.

■ Section 34–60–118.5 does not create an entitlement to proceeds; it presumes the existence of such an entitlement and imposes deadlines for the payment to those legally entitled to receive payment. The statute demonstrates the General Assembly's intent to grant to the Commission jurisdiction only over actions for the timely payment of proceeds and not over disputes with respect to the legal entitlement to proceeds under the terms of a specific royalty agreement.

Moreover, the General Assembly clarified its intent to exclude contractual disputes from the Commission's jurisdiction when it amended § 34–60–118.5 in 1998. *See* Colo. Sess. Laws 1998, ch. 186 at 636. The amended provisions now provide that the Commission shall have jurisdiction, but not exclusive jurisdiction, only "[a]bsent a bona fide dispute over the interpretation of a contract for payment," § 34–60–118.5(5), C.R.S.1999, and that:

> Before hearing the merits of any proceeding regarding payment of proceeds pursuant to this section, the oil and gas conservation commission shall determine whether a bona fide dispute exists regarding the interpretation of a contract defining the rights and obligations of the payor and payee. If the commission finds that such a dispute exists, the commission shall decline jurisdiction over the dispute and the parties may seek resolution of the matter in district court.

Section 34–60–118.5(5.5), C.R.S.1999.

Under this amendment, therefore, the Commission does not have jurisdiction to interpret any royalty agreement to determine the propriety of disputed post-production deductions.

■ If the Generally Assembly amends a statute, an intent to change the law is generally presumed. That presumption may be rebutted by a showing that the General Assembly amended the statute simply to clarify an ambiguity. Whether an amendment was intended as a change or as a clarification is a question of statutory interpretation subject to judicial determination. In making that determination, we may refer to the language of the statute and to the legislative history of the amendment. *United Guaranty Residential Insurance Co. v. Dimmick,* 916 P.2d 638 (Colo.App.1996) (court may consider legislative history, prior enactments of the statute, and subsequent amendments to determine legislative intent); *see Southwest Capital Investments, Inc. v. Pioneer General Insurance Co.,* 924 P.2d 1205 (Colo.App.1996) (presumption that General Assembly intends to change law by amending statute not applicable if amendment was meant to clarify ambiguity).

The language of the amendment demonstrates the General Assembly's intent merely to clarify any ambiguity that may have existed in the former version of the statute. Indeed, the statute as originally enacted and the amendment both provide evidence of the General Assembly's intent to exclude the resolution of contractual disputes from the jurisdiction of the Commission.

The parties' real dispute here is not with respect to the timeliness of any payments under § 34–60–118.5. It relates, rather, to plaintiffs' liability for payments that would have been made, but for plaintiffs' deduction of certain post-production costs. Consequently, it is the extent of defendants' legal entitlement to further payments under the royalty agreement that is at issue. The Commission properly concluded that § 34–60–118.5 gave it no jurisdiction over that question.

Similarly, the district court properly affirmed the Commission's determination of the extent of its authority.

## II.

◼ Plaintiffs further contend that, if § 34–60–118.5 is interpreted in this manner, it violates the constitutional provisions guaranteeing equal protection of the laws, because it will improperly distinguish between those payors who assert their right to take deductions prior to calculating royalties owed to payees and other payors who do not assert that right, even though the two classes of payors are similarly situated. We are not persuaded.

◼ In an equal protection analysis, the level of judicial scrutiny varies according to the type of classification involved and the nature of the right affected. If a classification does not infringe on a fundamental right and is not based on either a suspect classification or a classification requiring intermediate scrutiny, the rational basis standard of review is used. *Culver v. Ace Electric,* 971 P.2d 641 (Colo.1999).

◼ Under this rational basis standard, the person challenging a statute must show that the classification arbitrarily singles out a group of persons for disparate treatment in comparison to other persons who are similarly situated. In such a review, a statute is presumed to be constitutional, and the party challenging its validity bears the burden of convincing the court beyond a reasonable doubt that the classification does not bear a rational relationship to a legitimate legislative purpose. If any conceivable set of facts would lead to the conclusion that a classification serves a legitimate purpose, a court must assume the existence of those facts. *Christie v. Coors Transportation Co.,* 933 P.2d 1330 (Colo.1997); *Colorado Society of Community & Institutional Psychologists, Inc. v. Lamm,* 741 P.2d 707 (Colo.1987) (statute relating to economic or social subjects will be struck down only if no reasonably conceivable set of facts could establish a rational relationship between the act and a legitimate end of government).

Here, the rational basis standard of review is appropriate because § 34–60–118.5 does not infringe upon a fundamental right, does not involve a suspect class, and does not draw a distinction that would require an intermediate level of scrutiny.

As a threshold matter, we disagree with plaintiffs' characterization of the distinction drawn by the statute. Section 34–60–118.5 distinguishes between broader classes than those described by plaintiffs. The statute does not simply classify payors based on whether or not they assert the right to deduct post-production costs. Rather, it distinguishes between parties based on the existence or non-existence of a dispute over the rights arising under a contract. Thus, while the statute may distinguish between the two classes of payors described by plaintiffs, those two classes comprise only subcategories of larger groups classified by the statute.

Moreover, although we will assume that payors in the two groups are similarly situated, we conclude that there is a rational relationship between the statutory classification and a legitimate state purpose.

Section 34–60–118.5 confers jurisdiction upon the Commission to calculate the amount of proceeds due a payee and to enforce the timely payment of those proceeds, but it leaves to the courts the authority to decide contractual disputes, such as a determination of a potential payee's legal entitlement to proceeds. These types of disputes may involve not only contractual interpretation, but the application of complex legal principles if, for example, a payor is claiming the right to deduct post-production costs. *See Garman v. Conoco, Inc.,* 886 P.2d 652 (Colo.1994); *Rogers v. Westerman Farm Co.,* 986 P.2d 967 (Colo.App.1998). Thus, by reserving the determination of contractual disputes for the courts, § 34–60–118.5 promotes the state's legitimate interest in ensuring the proper and consistent resolution of complex legal questions.

We conclude, therefore, that the classification made by § 34–60–118.5 is rationally related to a legitimate state purpose, and it does not violate any equal protection guarantees.

## III.

◼ Finally, there is no merit in plaintiffs' contentions that the statute is un-

constitutionally vague, impermissibly subjects different classes of payors to different statutes of limitations, and denies certain classes of payors access to particular forums.

Contrary to plaintiffs' assertion, the statute does not create a vague classification based on the class of payor involved. Rather, the statute clearly distinguishes between two different classes of disputes, one of which involves actions under § 34–60–118.5 for the timely payment of proceeds and the other concerning disputes over the parties' rights under a royalty contract. The fact that each of these types of actions may be subject to a different statute of limitations and must be brought in a particular forum does not violate any guarantee of equal protection.

The judgment of the district court is affirmed.

Judge RULAND and Judge ROTHENBERG concur.