COLORADO COURT OF APPEALS                                    **2016COA178**

Court of Appeals No. 15CA2063
Garfield County District Court No. 14CV30180
Honorable James B. Boyd, Judge

Grant Brothers Ranch, LLC,

Plaintiff-Appellant,

v.

Antero Resources Piceance Corporation, a withdrawn Colorado corporation,
and Ursa Operating Company, LLC, a Delaware corporation,

Defendants-Appellees.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE FOX
Bernard and Richman, JJ., concur

Announced December 1, 2016

Dufford, Waldeck, Milburn & Krohn, LLP, Nathan A. Keever, Grand Junction,
Colorado, for Plaintiff-Appellant

Beatty & Wozniak, P.C., Michael J. Wozniak, Karen L. Spaulding, Malinda
Morain, Denver, Colorado, for Defendants-Appellees

¶ 1 Plaintiff, Grant Brothers Ranch, LLC (Grant Brothers), sued defendants, Antero Resources Piceance Corporation (Antero) and Ursa Operating Company, LLC (Ursa) (collectively, Operators), to recover its share of proceeds derived from the production and sale of oil and gas. Concluding that Grant Brothers was required and failed to exhaust its administrative remedies available under the Oil and Gas Conservation Act, §§ 34-60-101 to -130, C.R.S. 2016 (the Act), the district court held that it lacked subject matter jurisdiction over the action and granted summary judgment in favor of Operators. Grant Brothers appeals the judgment dismissing its claims with prejudice. We affirm in part, reverse in part, and remand with directions to correct the judgment.

## I. Background

¶ 2 Antero, an oil and gas exploration and production company, received approval from the Colorado Oil and Gas Conservation Commission (the Commission) to establish a drilling and spacing unit to produce oil and gas in Garfield County. Grant Brothers owned property within this unit. Antero wished to produce the oil and gas underlying Grant Brothers' property, but Grant Brothers

refused Antero's offer to lease the minerals or participate in their production.

¶ 3    As a result, Antero requested that the Commission pool all nonconsenting interests in the unit and allow Antero to produce and sell the oil and gas of the nonconsenting owners.  Grant Brothers asked the Commission to deny Antero's request.  After a hearing, the Commission issued an order pooling all of the nonconsenting interests in the unit.

¶ 4    About a year and a half after issuing this pooling order, the Commission approved Antero's request to establish another drilling and spacing unit within the same lands as the first unit in order to produce oil and gas from a deeper formation.  Again, Antero asked Grant Brothers to lease the minerals or participate in their production and, again, Grant Brothers refused.  Antero requested that the Commission pool all nonconsenting interests in the second unit.  After a hearing, the Commission issued an order pooling all nonconsenting interests in the second unit.

¶ 5    As a result of the Commission's pooling orders, Grant Brothers became a nonconsenting owner pursuant to section 34-60-116(7), C.R.S. 2016, of the Act.  In pertinent part, this meant that Grant

Brothers was entitled to receive its interest in the proceeds derived from the production and sale of oil and gas from wells in the units. However, Grant Brothers would receive payment only after these wells reached "payout," in other words after Antero recovered the costs allowed by section 34-60-116(7). The pooling orders required Antero to furnish Grant Brothers with monthly statements containing information about its costs and its proceeds.

¶ 6 Almost three years after the Commission issued its last pooling order, Grant Brothers asked Antero for permission to audit its books and records regarding the wells at issue. Antero refused, noting that it had been sending Grant Brothers the required monthly statements.

¶ 7 About two years after Antero refused the request for an audit, Grant Brothers sued Operators in district court.[1] Grant Brothers' complaint requested an equitable accounting and alleged that the wells had reached payout, but Operators had yet to pay Grant Brothers. Operators filed a motion for summary judgment, asserting that Grant Brothers was required to exhaust its

---

[1] Antero drilled and operated the wells within the units until December of 2012, when Ursa assumed operation of the wells.

administrative remedies available under the Act and had failed to do so before filing its complaint. Operators argued that the district court lacked subject matter jurisdiction over the action and should dismiss it with prejudice. The court agreed and granted summary judgment, dismissing the action with prejudice.

## II. Summary Judgment

¶ 8    Grant Brothers first contends that the district court improperly granted summary judgment because Grant Brothers was not required to exhaust its administrative remedies, and, thus, the court had subject matter jurisdiction over the action. We disagree. Second, Grant Brothers argues that it was inappropriate for the district court to dismiss the action *with* prejudice on the basis that the court lacked subject matter jurisdiction over the action. We agree that dismissal with prejudice was error.

### A. Administrative Exhaustion

¶ 9    Grant Brothers argues that the Act does not contain a clear manifestation of legislative intent requiring an involuntarily pooled mineral rights owner to exhaust administrative remedies before seeking an equitable accounting in district court regarding the amount of proceeds owed after the wells at issue reach payout.

Grant Brothers asserts that the Act's language and legislative history — including the 1998 amendments to the Act and related testimony from Senator Tilman Bishop, the sponsor of the amendments[2] — and the Commission's rules support this position.

### 1.    Preservation

¶ 10    The parties agree that Grant Brothers properly preserved this argument, except to the extent that Grant Brothers uses Senator Bishop's testimony to support its contention.

¶ 11    We do not consider "arguments never presented to, considered or ruled upon by" the district court. *Core-Mark Midcontinent Inc. v. Sonitrol Corp.*, 2016 COA 22, ¶ 24 (citation omitted). All that is needed to preserve an issue for appeal is for the issue to be brought to the district court's attention so that the court has an opportunity to rule on it. *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010).

¶ 12    Responding to the motion for summary judgment, Grant Brothers argued that the legislature did not intend for the

---

[2] In 1998, Senator Bishop sponsored a bill, S.B. 98-159, that amended several parts of the Act, including provisions in section 34-60-118.5, C.R.S. 2016, concerning the Commission's jurisdiction over certain disputes. *See* Ch. 186, sec. 1, § 34-60-118.5, 1998 Colo. Sess. Laws 636.

Commission's jurisdiction over disputes like the one at issue to be exclusive or, relatedly, to require administrative exhaustion. Grant Brothers supported this argument by discussing the Act's 1998 amendments. On appeal, Grant Brothers merely presents relevant legal research — Senator Bishop's testimony — to further support the argument previously made to the district court.[3] Therefore, we conclude that Grant Brothers' argument was properly preserved.

## 2. Review Standard

¶ 13    Although Operators moved for summary judgment, their motion argued that the district court lacked subject matter jurisdiction over the action. The district court granted Operators' motion solely on this basis. The district court's order left unresolved significant factual disputes, such as whether payout had occurred. Given these facts, Operators' motion was effectively a

---

[3] Although Senator Bishop's testimony was not specifically presented to the district court, the arguments regarding legislative intent and related legislative history were brought to the court's attention such that it had an opportunity to rule on this issue. *See Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010). We will not address the remainder of the arguments that Grant Brothers raised for the first time either on appeal or in its reply brief. *See Core-Mark Midcontinent Inc. v. Sonitrol Corp.*, 2016 COA 22, ¶ 24; *see also People v. Czemerynski*, 786 P.2d 1100, 1107 (Colo. 1990) (refusing to address issues not raised in an appellant's original brief but raised for the first time in the reply brief).

motion to dismiss for lack of subject matter jurisdiction more properly brought under C.R.C.P. 12(b)(1) than C.R.C.P. 56. *See Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 925 (Colo. 1993) (reasoning that a court's determination under Rule 12(b)(1) reveals whether it has power to hear the case, while its determination under Rule 56 results in an adjudication on the merits); *cf. Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir. 1987) ("Seeking summary judgment on a jurisdictional issue . . . is the equivalent of asking a court to hold that because it has no jurisdiction the plaintiff has lost on the merits. This is a nonsequitur.").

¶ 14    Because the record contains all necesary information, we apply Rule 12(b)(1) to the record before us and resolve these issues as a matter of law. *See Trinity Broad. of Denver, Inc.*, 848 P.2d at 925; *W.O. Brisben Cos. v. Krystkowiak*, 66 P.3d 133, 137 (Colo. App. 2002) (citing *Norsby v. Jensen*, 916 P.2d 555, 559 (Colo. App. 1995)), *aff'd on other grounds*, 90 P.3d 859 (Colo. 2004).

¶ 15    We employ a mixed standard of review to motions to dismiss for lack of subject matter jurisdiction. *Hanson v. Colo. Dep't of Revenue*, 140 P.3d 256, 257-58 (Colo. App. 2006). We review

factual findings for clear error, and such findings will be upheld unless they have no support in the record. *Id.* However, we review legal conclusions de novo. *Id.* We also review a district court's interpretation of a statute de novo. *Anderson v. Vail Corp.*, 251 P.3d 1125, 1127-28 (Colo. App. 2010). In construing legislation, we look first to the plain language of the statute, reading it as a whole. *Young v. Brighton Sch. Dist. 27J*, 2014 CO 32, ¶ 11. Then, if the language is ambiguous, we "construe the statute in light of the General Assembly's objective," presuming "that the legislature intended a consistent, harmonious, and sensible effect." *Anderson,* 251 P.3d at 1127-28.

### 3.     Applicable Law

¶ 16     In the Act, the Colorado Legislature granted the Commission "the authority to regulate: . . . the drilling, producing, and plugging of wells and all other operations for the production of oil or gas . . . ." § 34-60-106(2)(a), C.R.S. 2016.[4] The Act's declaration

---

[4] The Commission also regulates "[t]he spacing of wells . . . and . . . [l]imit[s] the production of oil or gas, or both, from any pool or field for the prevention of waste, and [limits] and [allocates] the production from such pool or field among or between tracts of land having separate ownership therein, on a fair and equitable basis so that each such tract will be permitted to produce no

8

gives the Commission a broad grant of jurisdiction. *See*
§ 34-60-105(1), C.R.S. 2016 ("The commission has jurisdiction over
all persons and property, public and private, necessary to enforce
the provisions of this article, and has the power to make and
enforce rules, regulations, and orders pursuant to this article, and
to do whatever may reasonably be necessary to carry out the
provisions of this article."); *see also Oborne v. Cty. Comm'rs*, 764
P.2d 397, 401 (Colo. App. 1988) (stating that the Act is a
comprehensive statute intended to regulate development,
production, and utilization of gas and oil).

¶ 17    The Act further provides that "[a]bsent a bona fide dispute
over the interpretation of a contract for payment, the oil and gas
conservation commission shall have jurisdiction to determine . . .
[t]he date on which payment of proceeds is due" and any "amount
of proceeds" or interest due.  § 34-60-118.5(5)(a) and (c), C.R.S.
2016.  Relatedly, the very next provision, subsection 5.5, provides:

> Before hearing the merits of any proceeding
> regarding payment of proceeds pursuant to
> this section, the oil and gas conservation
> commission shall determine whether a bona

more than its just and equitable share from the pool . . . ."
§ 34-60-106(2)(c) and (3)(a), C.R.S. 2016.

fide dispute exists regarding the interpretation of a contract defining the rights and obligations of the payer and payee. If the commission finds that such a dispute exists, the commission shall decline jurisdiction over the dispute and the parties may seek resolution of the matter in district court.

§ 34-60-118.5(5.5).

¶ 18 In relation to whether payout has occurred, the Act states that, "[i]n the event of any dispute" as to the costs allowed to be recovered before having to pay the nonconsenting owners, "the [C]ommission shall determine the proper costs[.]" § 34-60-116(7)(a). It also states that, during the period of cost recovery occurring before the wells reach payout, "the [C]ommission shall retain jurisdiction to determine the reasonableness" of such costs. § 34-60-116(7)(d).

¶ 19 An exception to the Commission's jurisdiction concerns disputes over the interpretation of a payment contract. The Commission shall "decline jurisdiction over the dispute," and the parties can "seek resolution of the matter in *district court,*" if the

dispute involves a contract.  § 34-60-118.5(5.5) (emphasis added).[5]

¶ 20    If "complete, adequate, and speedy" administrative remedies are available, a party generally must exhaust these remedies before filing suit in district court.[6] *City & Cty. of Denver v. United Air Lines, Inc.*, 8 P.3d 1206, 1212 (Colo. 2000).  The administrative exhaustion doctrine "enables the agency to make initial determinations on matters within its expertise and to compile a record that is adequate for judicial review" so as to "prevent piecemeal application of judicial relief and to conserve judicial resources."  *State v. Golden's Concrete Co.*, 962 P.2d 919, 923 (Colo. 1998); *accord Great W. Sugar Co. v. N. Nat. Gas Co.*, 661 P.2d 684, 690 (Colo. App. 1982) (explaining that primary jurisdiction allows an agency to decide "in the first instance . . . technical questions of fact uniquely within the agency's expertise and experience") (citation omitted).

---

[5] The legislature limited the Commission's jurisdiction over lawsuits for damages or injunctive relief, but this is not at issue in this case. *See* § 34-60-114, C.R.S. 2016.

[6] There are exceptions to administrative exhaustion, but none was invoked here.

¶ 21    However, when the administrative agency does not have the authority to grant the relief requested by the party seeking judicial action, and the available administrative remedies are "ill-suited" for providing the relief requested, administrative exhaustion is not required. *Brooke v. Rest. Servs., Inc.*, 906 P.2d 66, 71 (Colo. 1995) (citation omitted). In determining whether a court has subject matter jurisdiction over a claim where a party did not exhaust administrative remedies available to it, courts examine whether: (1) the claim was filed pursuant to the relevant statute; (2) this statute provides a remedy for the claim asserted; and (3) the legislature intended this statute to provide a "comprehensive scheme" addressing the issues underlying the claim. *Id.* at 68-71; *see Pfenninger v. Exempla, Inc.*, 17 P.3d 841, 843-44 (Colo. App. 2000).

### 4.    Analysis

¶ 22    We conclude that the district court was right to dismiss the action for the reasons stated below.

¶ 23    First, in determining whether the claim at issue was filed pursuant to the relevant statute, *Brooke*, 906 P.2d at 68-71, we understand Grant Brothers' claim as one for payment of proceeds arising under sections 34-60-116 and -118.5 of the Act. At issue is:

12

(1) whether payout has been reached; (2) if so, the date on which payment proceeds became due; and (3) the amount owed (plus interest) to Grant Brothers. § 34-60-118.5(5) and (5.5). It is undisputed that Grant Brothers is a nonconsenting owner seeking payment of funds acquired by Operators by extracting and selling natural gas from the wells at issue. Consequently, Grant Brothers qualifies as a "payee" entitled to payment of proceeds from Operators, the "payers." *See* §§ 34-60-116(7), -118.5(1)(a) and (b).

¶ 24    Grant Brothers' entitlement, however, is subject to a condition precedent. Where, as here, an operator and a nonconsenting owner have no contract addressing the issue, "[t]he date on which payment of proceeds is due" is the date the wells reach payout. § 34-60-118.5(5). Grant Brothers receives payment only if and when payout occurs.

¶ 25    Reading subsections -118.5(5) and -118.5(5.5) together, as we must, and applying the statutory language, *Young*, ¶ 11, we conclude that the Act's comprehensive scheme means that primary jurisdiction for the present dispute remains with the Commission. *See Great W. Sugar Co.*, 661 P.2d at 690. If one party is dissatisfied with the results of the administrative process, that party can then

13

seek judicial review. *See* § 34-60-111, C.R.S. 2016 (providing that any final order of the "[C]ommission shall be subject to judicial review"); *see also* Dep't of Nat. Res. Reg. 501(c), 2 Code Colo. Regs. 404-1 (adopting the State Administrative Procedure Act (APA), sections 24-4-101 to -108, C.R.S. 2016); Dep't of Nat. Res. Reg. 503(b)(8), 2 Code Colo. Regs. 404-1 (allowing a mineral interest owner to file an application to the Commission for the purpose of seeking a hearing on provisions related to measurement); Dep't of Nat. Res. Reg. 503(b)(10), 2 Code Colo. Regs. 404-1 (allowing an aggrieved interest owner to file an application for relief for any other matter not described in the regulation); Dep't of Nat. Res. Reg. 522, 2 Code Colo. Regs. 404-1 (allowing a mineral owner to file a complaint requesting the issuance of a violation notice directing an operator to voluntarily remedy the violation).

¶ 26    Second, as to whether the relevant statute provides a remedy for the claim asserted, *Brooke*, 906 P.2d at 68-71, the Act provides a remedy for claims for the payment of proceeds where the parties have no contract addressing the issue.

¶ 27    Here, there is no contract; thus, there is no contract dispute. *See, e.g., Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d

1138, 1157 (10th Cir. 2000) (applying Colorado law); *Anderson Living Trust v. ConocoPhillips Co., LLC*, 952 F. Supp. 2d 979, 1054 (D.N.M. 2013) (applying Colorado law); *Grynberg v. Colo. Oil & Gas Conservation Comm'n*, 7 P.3d 1060, 1062-63 (Colo. App. 1999) (finding the Commission had jurisdiction to calculate the amount of proceeds due to a payee and to enforce timely payment, but lacked jurisdiction to resolve a contractual dispute over whether operators were entitled under a lease to deduct post-production expenses in computing royalties due to owners).

¶ 28    A payee contesting the payment (or nonpayment) of proceeds must first submit a written request, such as Commission Form 37, to the payer(s) requesting certain information regarding the costs of installing and operating the well.  § 34-60-118.5(2.5); Dep't of Nat. Res. Reg. 329, 2 Code Colo. Regs. 404-1.  After submitting Form 37, if the dispute remains unresolved, the payee may then submit Form 38 to request a hearing before the Commission.  Any final order resulting from such a hearing is subject to judicial review pursuant to the APA, sections 24-4-101 to -108.  *See* § 34-60-111; *see also* Dep't of Nat. Res. Reg. 501, 2 Code Colo. Regs. 404-1.

¶ 29    Third, with regard to whether the legislature intended the statutory remedy to be the primary remedy for the claim asserted, *Brooke*, 906 P.2d at 68-71, the legislature has said, by the Act's language and structure, that a proceeding before the Commission, as described above, is the primary remedy for nonconsenting owners's claims for the payment of proceeds where there is no germane contract between the parties. *See* §§ 34-60-118.5(5), -118.5(5.5), and -116(7). The comprehensive statutory scheme detailed above — addressing when payout has occurred, the date when payment of proceeds is due, and the amount of proceeds due where the parties have no contract regarding the payment of proceeds — evidences this intent. *See Brooke*, 906 P.2d at 68-71; *Egle v. City & Cty. of Denver*, 93 P.3d 609, 612 (Colo. App. 2004). The scheme establishes a typical administrative process allowing for rulemaking, hearings, and eventual judicial review of disputes within the Commission's area of expertise.

¶ 30    Contrary to Grant Brothers' suggestion, the 1998 amendments do not evidence a change in the legislature's intent regarding the primacy of the Commission's jurisdiction over disputes like this one. Before the amendments, the Act stated that the Commission

16

"shall have *exclusive* jurisdiction to determine . . . [t]he date on which payment of proceeds is due a payee[;] . . . [t]he existence or nonexistence of an occurrence . . . [justifying] a delay in payment; and . . . [t]he amount of proceeds plus interest, if any, due a payee by a payor." § 34-60-118.5(5), C.R.S. 1997 (emphasis added).  After the amendments, the Act states that, "[a]bsent a bona fide dispute over the interpretation of a contract for payment, [the Commission] shall have jurisdiction to determine" the same three issues outlined in the older version of the Act.  § 34-60-118.5(5), C.R.S. 2016.  The 1998 amendments did not change the Commission's primary jurisdiction over disputes for the payment of proceeds such as the one before us.  Rather, they clarified that disputes involving a "bona fide dispute over the interpretation of a contract for payment" should be brought in the district court.  *See* §§ 34-60-118.5(5) and -118.5(5.5).  The history of the 1998 amendments to the Act, implemented through Senate Bill 98-159,[7] reveals the following:

---

[7] Although we conclude that the Act's language evidences its underlying legislative purpose, we examine the legislative history of the 1998 amendments in order to fully address the issues Grant Brothers raises on appeal.  *See Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 969 (Colo. App. 2011) ("[W]e may consider legislative history when there is substantial legislative discussion

- Senator Bishop repeatedly stated that the thrust of the bill was to ensure that royalty owners received more information regarding the payments from operators so that they could ensure the sufficiency of the payments of proceeds. *See* Hearings on S.B. 98-159 before the Conf. Comm., 61st Gen. Assemb., 2nd Sess. (Apr. 16, 1998) (comments of Senator Bishop); Hearings on S.B. 98-159 before the S. Agricultural Comm., 61st Gen. Assemb., 2nd Sess. (Feb. 4, 1998) (comments of Senator Bishop). Bishop, along with the Member of the House who worked with him on the bill, also stressed multiple times that the bill was not meant to change any *substantive* contractual rights established by oil and gas leases, but it would change some *procedural* rights (such as how payments should be made and what information should be disclosed regarding such payments). Hearings on S.B. 98-159 before the Conf. Comm., 61st Gen. Assemb., 2nd Sess. (Apr. 16, 1998) (comments of Senator Bishop). Bishop also emphasized that the Commission should not be asked to

surrounding the passage of a statute, and the plain language interpretation of a statute is consistent with legislative intent.").

resolve disputes that are better addressed by courts (e.g., interpretation of contract provisions).  *Id.*

- Walter Fees, who worked with Bishop on the bill, authored a letter discussing changes to section 34-60-118.5, which states, "[a]fter my talk with [Senator] Bishop[,] he feels the [Commission] should have exclusive jurisdiction over the payment of proceeds."  *See* Hearings on S.B. 98-159 before the S. Agricultural Comm., 61st Gen. Assemb., 2nd Sess. (Feb. 4, 1998) (letter to Richard Griebling, referenced at the hearing).

- Jack Rigg, associated with Amoco and the Rocky Mountain Oil and Gas Association, also testified that the Commission should not be involved in private *contract* disputes and that one of the main purposes of the amendment was to clarify that the Commission was not to interpret contract terms in place of a court.  *See id.* (comments of Jack Rigg).  He never suggested that the Commission should not continue to have primary jurisdiction over noncontractual disputes over the payment of proceeds.  *Id.*

We are thus unpersuaded by Grant Brothers' arguments to the contrary.

¶ 31    While section 34-60-118.5 alone does not create an entitlement to proceeds, *Grynberg*, 7 P.3d at 1063, a final order from the Commission recognizing one's status as a nonconsenting owner pursuant to section 34-60-116 does.  Grant Brothers' entitlement to payment is not at issue; the issues are if and when Grant Brothers is to receive payment and in what amount.

¶ 32    To allow parallel judicial proceedings on these same issues, rather than giving the Commission the first opportunity to decide them, *see Great W. Sugar Co.*, 661 P.2d at 690, would go against the legislative intent revealed by the Act's declaration (§ 34-60-105(1)), language (§ 34-60-118.5), and administrative processes (*see* Dep't of Nat. Res. Regs. 501, 503(b)(8), 503(b)(10), 522, 2 Code Colo. Regs. 404-1).  And, requiring Grant Brothers and similarly situated claimants to exhaust administrative remedies promotes the policy objectives at the heart of the doctrine of administrative exhaustion.  *See Golden's Concrete Co.*, 962 P.2d at 923 (expounding on the doctrine's policy objectives, including the conservation of judicial resources).  The determination Grant Brothers seeks concerning key details of the oil and gas production process is well within the expertise of the Commission, and allowing

20

the Commission to develop a record in resolving this dispute will conserve judicial resources and result in a more optimal application of judicial relief, should the claim undergo later judicial review. *See id.*

¶ 33 We therefore conclude that Grant Brothers was required to exhaust its administrative remedies and did not do so before filing suit in the district court. As a result, we conclude that the district court properly dismissed the action.

## B. Dismissal With Prejudice

¶ 34 Grant Brothers contends that the district court erred in dismissing its claim with prejudice solely on the basis that the court lacked subject matter jurisdiction. We agree.

¶ 35 A dismissal under C.R.C.P. 12(b)(1) is not an adjudication on the merits, but rather is the result of a court lacking the power to hear the claims asserted. *See Trinity Broad. of Denver, Inc.*, 848 P.2d at 925. Because we have determined that the issue of subject matter jurisdiction raised by Operators' motion should have been addressed pursuant to Rule 12(b)(1), the dismissal we affirm is necessarily without prejudice, which the district court shall correct upon remand. Grant Brothers therefore retains the ability to seek

further relief from the Commission, whose orders are then subject to judicial review. *See* Dep't of Nat. Res. Reg. 501, 2 Code Colo. Regs. 404-1.

## III. Operators' Request for Costs

¶ 36 Operators requested their costs pursuant to C.A.R. 39. Because we affirm in part and reverse in part, we conclude that the trial court should determine what amount of appellate costs, if any, to award upon remand. *See* C.A.R. 39(a)(4) ("[I]f a judgment is affirmed in part, . . . costs are taxed *only* as ordered by the *trial court*.") (emphasis added).

## IV. Conclusion

¶ 37 The judgment is affirmed in part and reversed in part, and the case is remanded to the district court with directions to correct the judgment to clarify that the dismissal is without prejudice and to make a determination regarding Operators' request for costs pursuant to C.A.R. 39.

JUDGE BERNARD and JUDGE RICHMAN concur.