25CA0133 Park County v aSkag LLC 02-19-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0133
Park County District Court Nos. 24CV30019 & 24CV30021
Honorable Amanda Hunter, Judge

---

Park County Neighborhoods Alliance and Will-O-Wisp Metropolitan District, a quasi-municipal corporation and political subdivision of the State of Colorado,

Plaintiffs-Appellees,

v.

aSkag LLC,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE TOW
Welling and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 19, 2026

---

Christy Law LLC, Jessica Christy, Denver, Colorado, for Plaintiff-Appellee Park County Neighborhoods Alliance

Spencer Fane LLP, Jamie N. Dickinson, Jacob F. Hollars, Denver, Colorado, for Plaintiff-Appellee Will-O-Wisp Metropolitan District

Coaty and Woods, P.C., John D. Coaty, Dylan Woods, Rachael Wachs, Evergreen, Colorado, for Defendant-Appellant

¶ 1    Defendant, aSkag LLC (Applicant), appeals the district court's judgment entered in favor of plaintiffs, Park County Neighborhoods Alliance and Will-O-Wisp Metropolitan District (jointly, the neighborhood organizations), reversing the approval of Applicant's application for a waste transfer station (the proposed station) by the Board of County Commissioners for Park County (the Board)[1] and enjoining Applicant from operating the proposed station. We reverse and remand the case with directions to reinstate the Board's approval.

## I.    Background

¶ 2    Applicant submitted its initial planned unit development (PUD) rezoning application to operate the proposed station on land Applicant owned adjacent to the residential neighborhoods where the members of the neighborhood organizations live. The land is in an unincorporated part of Park County and, at the time of the application, was zoned residential. Applicant described the application as a "heavy industrial PUD zoning" application.

---

[1] The Board was a defendant in the district court case but did not join Applicant's appeal.

¶ 3    After the Board conditionally approved the initial application, Applicant submitted its final PUD rezoning application and sought approval for the operation of the proposed station.

¶ 4    The Board approved the final PUD rezoning application by a vote of two to one, finding that it met the criteria in the Park County Land Use Regulations (LUR).

¶ 5    The neighborhood organizations filed a complaint in the Park County District Court challenging the Board's approval. They sought district court review of the Board's decision under C.R.C.P. 106(a)(4), contending that the Board had abused its discretion or exceeded its jurisdiction by approving the application. They also sought to enjoin Applicant from constructing or otherwise operating the proposed station. The district court reversed the Board's approval of the application and permanently enjoined Applicant from operating the proposed station. Applicant filed a motion to suspend the injunction, which the district court denied.

## II.    Standard of Review and Applicable Law

¶ 6    "Review of a governmental body's decision pursuant to Rule 106(a)(4) requires an appellate court to review the decision of the governmental body itself rather than the district court's

2

determination regarding the governmental body's decision." *No Laporte Gravel Corp. v. Bd. of Cnty. Comm'rs*, 2022 COA 6M, ¶ 23 (quoting *Bd. of Cnty. Comm'rs v. O'Dell*, 920 P.2d 48, 50 (Colo. 1996)). "Our review is limited to deciding whether the governmental body's decision was an abuse of discretion, based on the evidence in the record before it, or was made in excess of its jurisdiction." *Id.* "A governmental body abuses its discretion if it misinterprets or misapplies the law or if no competent record evidence supports its decision." *Id.* at ¶ 24.

¶ 7 We review and interpret the LUR, statutes, and administrative regulations de novo and apply ordinary rules of statutory interpretation. *Id.* at ¶ 26; *Barry v. Bally Gaming, Inc.*, 2013 COA 176, ¶ 9.

¶ 8 We review the grant of a permanent injunction for an abuse of discretion. *Trinidad Area Health Ass'n v. Trinidad Ambulance Dist.*, 2024 COA 113, ¶ 35. A district court abuses its discretion if its ruling misconstrues or misapplies the law or is manifestly arbitrary, unreasonable, or unfair. *Id.* We defer to the trial court's factual findings if they are supported by the record. *Id.*

### III.    Analysis

¶ 9    As a threshold matter, we reject the neighborhood organizations' contention that Applicant did not preserve its arguments because it neither filed a merits brief in the district court nor joined the Board's briefs filed in that court.  Notably, the Board presented to the district court the same arguments Applicant now raises on appeal, and the district court had the opportunity to rule on them.  *Cf. Grant Bros. Ranch, LLC v. Antero Res. Piceance Corp.*, 2016 COA 178, ¶ 11 (treating an issue as preserved because the issue had been "to the district court's attention so that the court [had] an opportunity to rule on it").  Moreover, in the C.R.C.P. 106(a)(4) setting, we review the agency's decision, rather than the district court's decision.  *No Laporte Gravel Corp.*, ¶ 23.  And Applicant actively participated in the Board proceedings.  Finally, the neighborhood organizations do not assert — and we cannot discern — any prejudice from Applicant's tacit reliance on the Board to present the arguments to the district court.

¶ 10    Under the circumstances of this case, we deem the arguments sufficiently preserved.  Thus, we turn to the merits of Applicant's

arguments in support of, and the neighborhood organizations' challenges to, the Board's approval of the application.

## A. PUD Process

¶ 11 The neighborhood organizations contend that the Board did not comply with the LUR, and thus misapplied the law, when it approved Applicant's request. We discern no error.

¶ 12 No party disputes that operation of the proposed station constitutes a heavy industrial use under the LUR. The LUR defines heavy industrial use, in relevant part, as "those uses involving the operation of heavy equipment, solid waste or sanitary waste transfer stations." LUR § 4-200.B.

¶ 13 Given this definition, the neighbors contend that any request for rezoning required the Board to follow the conditional use permitting process in the LUR — not the PUD process. In particular, the neighbors argue that the PUD process is meant for use when there is more than one type of use "within the area being zoned PUD." We disagree.

¶ 14 Article V of the LUR provides that uses within zoning districts are classified as permitted, conditional, or temporary. It further provides that "[t]he Industrial Zone District is intended for

application to areas designated as appropriate for commercial and industrial development by the Park County Strategic Master Plan [(SMP)]."[2]  LUR § 5-310.B.  An accompanying chart provides that heavy industrial uses are subject to the conditional use process and light industrial uses and transfer stations are subject to the permitted use process.  LUR § 5-310 tbl. 5-310.

¶ 15    On the other hand, the LUR defines a PUD as

> an area of land, controlled by one or more landowners, to be developed under unified control or unified plan of development for a number of dwelling units, commercial, educational, recreational, light industrial uses, heavy industrial uses, *or* any combination of the foregoing, the plan for which does not correspond in lot size, or type of use, density, lot coverage, open space, or other restriction to the existing land use regulations.

LUR § 5-313.A (emphasis added).  This language incorporates nearly verbatim the statutory definition of the term.  *See* § 24-67-

---

[2] The LUR describes the SMP "a guide to develop, rather than an instrument to regulate land use."  LUR § 1-102.A.  Further, the LUR provides that it "will recognize and attempt to implement the goals, objectives and policies of Park County as contained in the [SMP] where such goals, objectives, and policies are sufficiently specific to ensure that conditions based on them can be imposed in a rational and consistent manner."  *Id.*

103(3), C.R.S. 2025.[3]  The Colorado Supreme Court has described the statutory PUD process as "a flexible zoning mechanism."  *Bd. of Cnty. Comm'rs v. Hygiene Fire Prot. Dist.*, 221 P.3d 1063, 1068 (Colo. 2009).

¶ 16    The gravamen of this dispute centers on two phrases in both the statutory and LUR definitions of PUD: whether the phrase "a number of . . . uses" or the phrase "any combination" necessarily means that a PUD must encompass more than a single use.[4]  We do not think it does.  To begin with, one is "a number."  *See* § 2-4-102, C.R.S. 2025 (When interpreting statutes, "[t]he singular includes the plural, and the plural includes the singular.").  And the

---

[3] The differences between the LUR and the statute are that (1) the LUR breaks out light industrial uses and heavy industrial uses, while the statute simply lists "industrial uses"; and (2) the statute accounts for plans that do not "correspond in lot size, *bulk*, or type of use, [etc.]"  § 24-67-103(3), C.R.S. 2025 (emphasis added).

[4] Notably, the Board's decision explains that it "[l]imits the footprint of development of the Property to approximately 3 acres and preserves the remaining 55 acres as open, undevelopable space/buffer to residential property."  Thus, it appears that this PUD comprises *two* types of uses — the waste transfer station and open space.  *See, e.g., Telluride Locs. Coal. Petitioners' Comm. v. Kavannaugh*, 2024 COA 69, ¶ 2 (discussing a PUD comprising only residential use and open space) (*cert. granted on other grounds sub nom., Kavanaugh v. Telluride Locs. Coal. Petitioners' Comm.*, June 30, 2025).  Applicant does not argue this point, so we assume without deciding that this PUD encompassed a single use.

inclusion of "any combination" is in the disjunctive. In other words, a PUD can consist of one enumerated use *or* any combination of enumerated uses and, thus, is not limited to mixed-use development. And the LUR PUD definition explicitly enumerates heavy industrial as one of the permissible uses. LUR § 5-313.A. Thus, we cannot discern any reason why the Board would not have been permitted to treat as a PUD a single property owner's ("one or more landowners") single property ("a number of . . . uses") for a heavy industrial use, provided the property was to be developed under "unified control or unified plan of development."

¶ 17    As the Board pointed out in the district court proceedings, use of the PUD process was consistent with the LUR because it allowed development of Applicant's property pursuant to a "unified plan of development" and facilitated a particular heavy industrial use that would "not [otherwise] correspond in lot size, or type of use, density, lot coverage, open space, or other restriction to the existing land use regulations." *Id.* In particular, in the exercise of its discretion, the Board determined that using the PUD process to permit this limited heavy industrial use was preferable to rezoning the parcel in such a way as to permit *all* types of industrial use. In that way, as

Park County's Planning Commission observed in its recommendation to the Board, "this proposed use and plan will be the only use and the plan allowed on the parcel and the County will be able to oversee the development."

¶ 18    Thus, we do not agree with the neighbors (or with the district court) that the Board was prohibited from using the PUD process for Applicant's rezoning application. Nor can we conclude that doing so was an abuse of discretion, unsupported by the evidence in the record, or in excess of the Board's jurisdiction or authority. *See No Laporte Gravel Corp.*, ¶ 23.

### B.    Waste Transfer Station Regulations

¶ 19    The neighbors also contend that Applicant's operation plan, submitted with its PUD rezoning application, failed to comply with the regulations established by the Colorado Department of Public Health and Environment (the Department), and thus the Board abused its discretion by approving the application. We disagree.

¶ 20    Section 30-20-102(7), C.R.S. 2025, provides that "[a] transfer station shall not be deemed to be a solid wastes disposal site and facility and shall not require a certificate of designation as a solid

9

wastes disposal site and facility." The waste transfer station regulations provide the following:

> The governing body having jurisdiction can request, in writing, that the Department conduct a technical review of the site and facility documents and its operation plan. The Department shall be notified, [sic] by the governing body having jurisdiction when a permit approving a transfer station is issued. A copy of the approved operations plan shall be maintained at the transfer station.

Hazardous Materials & Waste Mgmt. Div. Reg. 7.1(B), 6 Code Colo. Regs. 1007-2 pt. 1. "'Governing body having jurisdiction' means the board of county commissioners if a site and facility is located in any unincorporated portion of a county . . . ." § 30-20-101(2.5), C.R.S. 2025. As noted, Applicant's proposed waste transfer site is located in an unincorporated part of Park County, and thus the Board is the governing body under these regulations.

¶ 21    The regulations further provide that "[o]wners or operators of all new transfer stations shall develop an operation plan that contains, as a minimum, descriptive responses of compliance to this subsection." Hazardous Materials & Waste Mgmt. Div. Reg. 7.2, 6 Code Colo. Regs. 1007-2 pt. 1. The same regulation then lists a variety of requirements for the operation plan. *Id.*

10

¶ 22    Notably, the waste transfer station regulations only discuss the Board's approval of a permit to operate a waste transfer station, not the Board's approval of a PUD rezoning application.

¶ 23    Section 24-67-105, C.R.S. 2025, governs the PUD standards and conditions and does not state that the waste transfer regulations supersede local land use ordinances or otherwise apply to decisions under them.  Thus, even if the Board erroneously found that the operation plan was sufficient when it approved Applicant's application, such a finding is immaterial because it is not an applicable criterion that needs to be met for approval of a PUD rezoning application.

### C.    Spot Zoning

¶ 24    The neighbors' final contention is that the rezoning constituted impermissible spot zoning.  We disagree.

¶ 25    When considering whether a change constitutes spot zoning, a reviewing tribunal examines "whether the change in question was made with the purpose of furthering a comprehensive zoning plan or [was] designed merely to relieve a particular property from the restrictions of the zoning regulations."  *Clark v. City of Boulder*, 362 P.2d 160, 162 (Colo. 1961).  "If the rezoning is for the purpose of

11

furthering a comprehensive zoning plan or based on changed conditions, the rezoning is not spot zoning." *Whitelaw v. Denv. City Council*, 2017 COA 47, ¶ 63.

¶ 26    We do not agree with the neighbors that the rezoning constitutes impermissible spot zoning because competent evidence in the record supports the Board's finding that the proposed station complies with the SMP and LUR.[5]

¶ 27    As noted, the rezoning was made in furtherance of the PUD zone district's purpose in the LUR "to uniformly plan residential use of property with a mix of related or supporting recreational, commercial, light industrial, and/or heavy industrial uses." LUR § 5-313.B.1.  The Board also found that rezoning the land to a heavy industrial classification would have rendered all permissible activities within this zoning category lawful on the property, whereas the PUD rezoning is tailored exclusively to the operation of the proposed station, as detailed in Applicant's application; if, in the future, Applicant wants to add additional structures or functions

---

[5] Because we reach this conclusion, we do not need to address if there were changed circumstances or whether a small island of heavy industrial use within a residential or commercial area was created.

not outlined in its application, then it will need to get a PUD amendment.[6] *See King's Mill Homeowners Ass'n v. City of Westminster*, 557 P.2d 1186, 1191 n.13 (Colo. 1976) (citing Robert M. Anderson, *American Law of Zoning* 242 (1968), for the proposition that spot zoning describes an amendment that reclassifies a small parcel in a manner inconsistent with existing zoning patterns for the benefit of the owner and to the detriment of the community, or without any substantial public purpose).

¶ 28　　There is also record support for the Board's determination that the proposed station complies with certain goals in the SMP. For example, Goal 7.1 is to diversify the economy and expand livelihoods in Park County, and two of the strategies to do so are "[e]ncourag[ing] specialty niches that serve . . . local residents" and "[e]ncourag[ing] and support[ing] business development." The proposed station furthers this goal. *See Whitelaw*, ¶ 64.

¶ 29　　Thus, there is record support for the Board's finding that rezoning furthers a comprehensive zoning plan; therefore, we

---

[6] This finding is from the January 30, 2024, Park County Development Services Staff Reports, which was incorporated into the Board's approval of the application.

conclude that the rezoning does not constitute impermissible spot zoning.

## D. Permanent Injunction

¶ 30    Because the district court erred by reversing the Board's approval of Applicant's PUD rezoning application, it also erred by enjoining Applicant from operating the proposed station. *See Cronk v. Bowers*, 2023 COA 68M, ¶ 27 (to obtain a permanent injunction, the claimant must prove that they have achieved actual success on the merits). We, therefore, reverse the permanent injunction.

## IV. Disposition

¶ 31    The judgment is reversed, and the case is remanded with directions to reinstate the Board's approval.

JUDGE WELLING and JUDGE LIPINSKY concur.